**FLOBOOTS CORPORATION et al. v. TEAS et al.**

No. 10161.

Court of Civil Appeals of Texas. San Antonio.

Nov. 3, 1937.

Rehearing Denied Dec. 1, 1937.

Swearingen & Miller, of San Antonio, for appellants.

Dickson & Huck and Robert Lee Bobbitt, all of San Antonio, and Eugene O. Monnett, of Tulsa, Okl., for appellees.

SLATTON, Justice.

Paul C. Teas filed this suit against Floboots Corporation, National Bank of Commerce of San Antonio, Vernon F. Taylor, and Frank R. Williams, upon a written contract between Teas and Floboots, under which the sum of $35,000 was deposited in the named bank, to the joint account of the said Taylor and Williams, to be paid upon the completion of the contract sued upon. Plateau Oil Company intervened, filed a cross-action and impleaded Paul C. Brooke, a partner of Teas, and Helmerich & Payne, Inc. Peerless Oil & Gas Company also intervened.

The contract upon which this suit was brought obligated Teas to drill a well for the purpose of exploring for oil and gas in Edwards county, and provided that the sum of $35,000, deposited in the named bank to the joint account of Taylor and Williams, was to be paid to Teas upon completion thereof. Teas and Brooke subcontracted a part of the drilling to Helmerich & Payne, Inc., and gave an assignment of a part ,of the $35,000 in payment. Teas and Brooke subcontracted the first 700 feet or more of the drilling to Cowden & Skinner, who received full payment therefor from Teas and Brooke with money advanced by Peerless Oil & Gas Company.

The trial was to the court and judgment was entered in favor of Teas and Brooke, and Helmerich & Payne, Inc., for the $35,000, with interest, as their rights appeared from the assignment. Judgment was also entered against Teas and Brooke in favor of Peerless Oil & Gas Company, from which there was no appeal. The trial court denied Plateau Oil Company and Floboots Corporation any recovery against the escrow fund and on their cross-action for the value of some leases which had been assigned to Teas and Brooke as a part of the consideration for the drilling of the well. The Plateau Oil Company and the Floboots Corporation are the only appellants. Upon motion, this court allowed the filing of a new appeal bond, in an opinion styled Teas v. Swearingen et al., reported in 101 S.W.2d 334.

The contract between the parties provided that the well should be drilled to 6,000 feet, unless oil and gas in commercial quantities was found at a lesser depth. After the contract was entered into between the parties and before any drilling had begun the following amendment·was mutually agreed upon, which, omitting formal parts, is as follows: "For the same consideration it is also mutually agreed between the parties hereto that the drilling contract between Paul C. Teas and the Plateau Oil Company shall be and is hereby supplemented to provide that the well shall be deemed completed, in addition to the completion terms set out in the original drilling contract, in the event of and upon the encountering and penetration of metamorphic formation to a depth of at least 200 feet, or after two weeks actual and diligent drilling time spent drilling in any such metamorphic formation. Should metamorphic formation be encoun-

tered in the course of drilling of the well and penetrated to a depth of 200 feet, or two weeks actual and diligent drilling time spent in the drilling of such formation, all at a depth of 3500 feet or less, the consideration to be paid for the drilling of the well shall be that proportion of $35,000.00 which the depth of the well at the point of completion, as herein provided, bears to the total contract depth of 6,000 feet, provided further that a minimum amount of Ten Thousand Dollars ($10,000.00) shall be paid to the said Paul C. Teas for the completion of the well."

Subsequent to the execution of the modified contract between Teas and Plateau and Floboots, Teas arranged with the Peerless Oil & Gas Company to advance money for the purpose of spudding in the well. The contract between the oil companies and Teas further provided for an assignment of oil and gas leases to Teas, as a part of the consideration for the drilling of said well. The test well was drilled upon one of these leases so assigned to Teas. Teas and Helmerich & Payne, Inc., entered into a written contract which obligated the corporation to drill the well from the spudder depth to completion for a consideration in cash less than the $35,000 which had been escrowed, and an assignment of certain oil and gas leases from Teas to Helmerich & Payne, Inc., and part of the said oil and gas leases included the land upon which the well was drilled.

The contract between Helmerich & Payne, Inc., and Teas provided, among other things, as follows: "to a total depth of six thousand feet (6000'), unless production of oil and gas or either of them in commercial quantities; igneous rock; Gneiss; Schist or any other impenetrable (incapable of being drilled) formation at a lesser depth."

After the contract was·executed between Teas and Helmerich & Payne, Inc., there was a verbal agreement that Helmerich & Payne, Inc., be paid the sum of $25,000 out of the escrowed $35,000. This verbal agreement was confirmed in ·writing by Teas to the Plateau Oil Company, together with a copy of the Helmerich & Payne, Inc., contract. Vernon F. Taylor and Frank R. Williams confirmed the verbal agreement in writing on January 22, 1936, to Helmerich & Payne, Inc.

The well was drilled to a depth of 5,270 feet, and at that point Teas and his subcontractors, Helmerich & Payne, Inc.,

claimed the well to be completed under the contracts, and demanded the sum of $35,000, which had been placed in escrow. There is no controversy between Teas and Brooke and Helmerich & Payne, Inc., as to the well having been completed under the contract between them. The controversy here is, Plateau and Floboots claim the well has not been completed under their contract with Teas, and that the acts of the parties in recognizing the assignment of the escrowed money to the extent of $25,000 were a novation and substitution of the Helmerich & Payne, Inc., contract instead of the Teas contract, and that the well was not completed within the meaning of the completion clause of the Helmerich & Payne, Inc., contract. The oil companies contend that in the drilling of the well a cave was encountered at a depth of 1,400 to 1,500 feet, which, on account of the cave not having been cased off by the drilling company, formed a bridge through which the oil company could not re-enter the well and finish it. They further assert that the negligence of the drilling company in failing to case off the cave caused an impenetrable bridge to form in the well, which was the proximate cause of the abandonment and not the metamorphic formation at the bottom of the well; and the drilling company not having completed its contract under the written agreements, and having received, as a part of the consideration, oil and gas leases covering some several thousand acres, such leases should be returned to them or they should recover the value thereof which they say is approximately $20,000.

On the other hand, Teas and Brooke assert that under their metamorphic formation clause in the contract with the oil companies, metamorphic formations having been penetrated to at least 200 feet in depth, the well is completed and they are entitled to the entire consideration. They further assert that the oil companies, having a representative on the ground, at the well, during all of the drilling period, and being fully advised as to the metamorphic formation being penetrated before reaching the depth of 3,500 feet, and insisting that the drilling be continued before and after reaching the 3,500-foot depth, have waived any right they had to declare the well completed and thereby reduce the total consideration under the metamorphic formation clause of their contract.

■ The appellees in their brief challenge our right to a consideration of the assignments of error presented by the appellants, and also ask that we determine that this appeal was taken without sufficient cause, and for delay, and pray for 10 per cent. damages, under article 1857, and article 1860, R.C.S.1925. In asking for this penalty the appellees have opened the entire record for our consideration, and we may consider any error, whether assigned or not. Clem v. Fulghum (Tex. Civ.App.) 37 S.W.2d 201, and authorities there cited. This renders unnecessary any discussion of the sufficiency of appellants' assignments.

Appellants by their first three propositions claim, in effect, that at a depth of between 1,400 and 1,500 feet there was encountered a cave in the drilling of the well, and because of the drilling company's failure to case off such cave the completion of the well was rendered impossible. The trial court found that, while the well was being drilled at a depth of approximately 3,000 feet, a formation, between the depths of 1,400 and 1,500 feet, caved into the hole, creating a bridge across and filling up the hole below the bridge to an undetermined depth; and on three or four subsequent occasions when such caving in recurred, the drilling was in extremely and unusually hardened metamorphic formations, and that the cave-in occurred because of the strain and vibration of the drill stem under constant and extreme pressure, and that the metamorphic formations encountered were the immediate cause of the cave-in. The trial court further found that the drilling of the entire well was done in a reasonable and prudent manner, and that the drilling company was not guilty of negligence in its failure to case off the cave in the well.

■ It is an elementary principle of law in this state that where a case is tried before the court, without a jury, his findings of fact, sustained by the evidence, are binding upon an appellate court. 3 Tex.Jur. § 771, p. 1102, and authorities there cited.

We have reviewed the evidence and find that it abundantly supports the findings of the trial court.

■ By the next proposition the appellants assert that at the depth of 1,220 feet, where the first 200 feet of alleged metamorphic formation was found by the drilling company, and the drilling company elected to proceed beyond the 3,500 feet for their own benefit and to the financial detriment of the appellants, they thereby waiv-

ed the right, if any they had, to abandon the well because of such alleged metamorphic formation. In the metamorphic formation clause, hereinbefore quoted, it will be seen that, if metamorphic formation was encountered before reaching the depth of 3,500 feet, a different consideration would be paid for the drilling of said well. It is in evidence that the oil companies had one of their trained representatives at the well during all of the drilling time, who had complete information as to the drilling, formations encountered, etc. The evidence further shows that the oil companies, with full information on the formations encountered in the drilling of the well, insisted, at all times, that the drilling should proceed. The trial court so found, and concluded that the oil companies were estopped to claim a completion of the well at a depth of 3,500 feet, or any lesser depth. The findings of the trial court on the facts of estoppel are well supported by the evidence, and we think that the supplemental agreement, known as the metamorphic clause, was made for the benefit of both parties, and the oil companies, well knowing all the facts with reference to the metamorphic formations encountered at and before reaching the depth of 3500 feet, should have exercised their right to declare the well completed, and their failing to do this works an estoppel to claim under it at this time.

By their next two propositions the oil companies assert that the formations encountered during the drilling of the well were not metamorphic formations within the meaning of the term as used in the completion clause of the contract. The trial court found that slate, indurated shale, and quartzite are metamorphic formations, and that the formations drilled from 1,020 feet to 5,270 feet were such metamorphic formations.

■ The contract here under review was made by and between men of long experience in the oil business, most of whom were highly educated, either in geology, or petroleum engineering. The appellees called an expert who testified as to the meaning of the terms, slate, indurated shale, and quartzite, and his evidence abundantly supports the finding of the trial court that slate, indurated shale, and quartzite are metamorphic formations.

■ The appellants by their next proposition further assert that, to the extent of $25,000, the contract between Helmerich & Payne and Teas was a novation of the contract between Teas and the oil company. We overrule this contention. The evidence shows that after the contract had been made between the oil companies and Teas and modified, as aforesaid, Teas made the contract with Helmerich & Payne, and as a part of the consideration gave leases he had received to Helmerich & Payne, and assigned a part of the $35,000, to-wit, $25,000, of the escrow money, to be paid to Helmerich & Payne upon the completion of the well. The evidence does not show any intent on the parties to substitute the Helmerich & Payne, Inc., contract in lieu of the Teas-oil company contract. The truth of it is that Teas desired to subcontract the drilling of the well, which he had a right to do, and, in order to protect himself, his completion clause in his contract with the driller was a little more difficult upon the part of the drilling company. These are all matters about which men are free to contract.

■ By their next proposition appellants complain that the trial court erred in excluding testimony offered by the appellants which tended to show that the contract price of the well involved in this action would have been $10,000, instead of $35,000, if the well had been located in a different area. In this we think no error is shown. The contract in suit is not ambiguous, and we can see no relevancy in what the contract price of another well in a different area would be to the contract in suit.

■ The appellants complain of the action of the trial court in denying them any recovery under their cross-action, either for the leases or the value thereof. The trial court having found facts sufficient to show a completion of the well by the drilling company, and having concluded that under the law they were entitled to the consideration provided for in the contract, and the oil and gas leases being a part of the consideration provided in the contract, there was no error of the trial court in allowing Teas and Brooke, and Helmerich & Payne to retain such oil and gas leases.

The trial court made elaborate and lengthy findings of fact and conclusions of law in this case, which we are unable to incorporate in this opinion, but for the purpose of our decision we adopt the same as our findings and conclusions.

We are of the opinion that the appeal in this case was not taken for the purpose of delay, and therefore overrule the appellees' prayer for the payment of 10 per cent. damages.

There being no reversible error shown, the judgment of the trial court will be in all things affirmed.