**PEERLESS OIL & GAS CO. v. TEAS.**

No. 10608.

Court of Civil Appeals of Texas. San Antonio.

Feb. 28, 1940.

Rehearing Denied March 27, 1940.

Swearingen & Miller, Eskridge & Groce, and Walter Groce, all of San Antonio, for appellant.

Fagan Dickson and J. B. Lewright, both of San Antonio, for appellee.

·NORVELL, Justice.

This is an action for damages based upon an alleged abuse of the process of garnishment brought by Paul C. Teas, plaintiff, against Peerless Oil and Gas Company defendant. The cause was tried to a jury and the judgment based upon the jury verdict awarded Teas both actual and punitive damages. The trial court required a remittitur of part of the exemplary damages found by the jury. Peerless Oil and Gas Company appealed and Teas presents cross-assignments of error, attacking the action of the trial court in requiring a remittitur as a precedent to an entry of judgment upon the verdict.

The parties will be here designated as Peerless and Teas.

This action results from certain prior lawsuits which must be noticed here in order to make clear the issues involved in this appeal.

On November 18, 1936, the 45th District Court of Bexar County, Texas, entered judgment in the case of Paul C. Teas v. The Floboots Corporation et al. The court found that Teas was entitled to recover from the Floboots Corporation the sum of $36,085, and that a certain fund of $35,000 on deposit in the National Bank of Commerce should be applied to the discharge thereof, by payments to be made as follows: To National Bank of Commerce for attorney's fees, $250; to Helmerich & Payne, Inc., $20,939.36; to Peerless Oil and Gas Company, $9,403.40, and to Paul C. Teas, $4,407.24.

It was further provided that Teas, Helmerich & Payne, Inc., and Peerless Oil and Gas Company have judgment against the other parties to the suit, including Floboots Corporation and Plateau Oil Company, establishing and fixing the respective interests of each of said parties, as above set out, in and to the fund of $34,750 held by the bank, being the amount remaining after the payment of the bank's $250 fee.

Relating to the Peerless recovery, the decree provided: "It is further ordered, adjudged, and decreed, that the intervener Peerless Oil & Gas Company do have and recover of and from Plaintiff Paul C. Teas the sum of $9,040.28 principal, plus interest thereon at the rate of six per cent (6%) per annum from March 17, 1936 to the date of this judgment, being $363.12, aggregating $9,403.40, together with interest thereon at the rate of six per cent (6%) per annum from the date of this until paid, but no execution shall issue thereon until Peerless Oil & Gas Company has first applied for and sought payment of the sum awarded to it from the National Bank of Commerce as above provided, and payment thereof has been refused by said bank; and said sum in the National Bank of Commerce to which Peerless Oil & Gas Company has been adjudged to be entitled shall constitute a primary fund for the payment of this judgment and when received same shall constitute (sic) pro tanto on the judgment here rendered in its favor against Paul C. Teas."

The Peerless Company, Floboots Corporation and the Plateau Oil Company gave notice of appeal. Floboots and Plateau attempted to perfect the same by the filing of a supersedeas bond. The sureties on this bond were Peerless Oil and Gas Company and Vernon F. Taylor. Taylor signed this bond not only as an individual, but as president of Plateau Oil Company, an appellant, and as president of the Peerless Company, a surety. The Plateau Company is a subsidiary of the Peerless Company, the majority of its stock being held by Peerless, and the officers of the two corporations being the same.

This supersedeas bond was held invalid by this Court. Teas v. Swearingen, Tex. Civ.App., 101 S.W.2d 334. Floboots and Plateau thereafter gave a new supersedeas bond and the appeal was decided adversely to Floboots and Plateau by this Court. Floboots Corporation v. Teas, Tex.Civ.App., 110 S.W.2d 180. While this appeal was pending, the Peerless Company caused writs of garnishment to be issued. These writs were served upon Gulf Oil Corporation and Shell Petroleum Corporation, both of whom were indebted to Teas. The writs were quashed by order of the 45th District Court of Bexar County, and that court's judgment was affirmed by this Court. Peerless Oil & Gas Co. v. Gulf Oil Corporation, Tex.Civ.App., 112 S.W. 2d 1083.

Teas in his petition set out the above facts relative to the history of the litigation, and pleaded that the writs of garnishment were wrongfully issued; that Peerless was actuated by malice, and caused said writs to be issued without probable cause therefor.

Teas further pleaded facts, alleged to have been known to Peerless at the time the application for garnishment was made, which constituted a basis for special actual damages. Teas prayed for a judgment of $40,325.38 actual damages, and $30,000 exemplary damages.

Briefly stated, Teas' theory of the case was that the writs of garnishment were not issued in a good faith attempt to collect the Peerless judgment, but for the purpose of taking advantage of Teas' existing financial and legal situation in order to force him to settle for a nominal amount, the judgment recovered in the Floboots case, in which the Plateau Oil Company, a Peerless subsidiary, was financially interested.

The findings of the jury upon special issues were as follows:

(1) That at the time of making application for writs of garnishment Teas had property in his possession in the State of Texas subject to execution, sufficient, when sold under execution, to satisfy the judgment for $9,403.45 with interest.

(2) That Peerless had knowledge on December 8, 1936, at the time of making the application for writs of garnishment, that Teas had property in his possession within this state, subject to execution, sufficient, when sold under execution, to satisfy the judgment for $9,403.45 with interest.

(3) That Peerless secured writs of garnishment to be issued and served on the Gulf and Shell with malice towards Teas.

(4) That Peerless had knowledge on December 8, 1936, that the issuance and service of writs of garnishment on Gulf and Shell would probably damage Teas in the operation of his business in the Smithville area.

(5) That the actual damages sustained by Teas were in the sum of $3,700.

(6) That the sum of $35,000 should be awarded Teas as exemplary damages.

In connection with Special Issue No. 2, the trial court gave the following definition of the word knowledge: "Knowledge of a fact means knowledge of such facts and circumstances as are sufficient to put a reasonably prudent person upon inquiry, which inquiry, if made with such diligence as would be used by a reasonably prudent person under existing circumstances, would lead to actual knowledge of such fact in question."

The word malice, as used in Special Issue No. 3, was defined as follows: "Malice is a state of mind to be found from the facts in the case, and which characterizes an unlawful act intentionally done, without reasonable grounds for believing the act to be lawful. It is not necessary in order to find malice, that hatred, dislike, spite and resentment exist, but it may be inferred from the doing of an unlawful act without reasonable grounds for believing the same to be lawful."

After the jury had returned its verdict, the trial court on its own motion entered an order reciting that the court was of the opinion that the verdict of the jury for exemplary damages was excessive in the amount of $25,000 and decreed that should the plaintiff file a remittitur of said sum within ten days judgment would be entered for $3,700 actual damages and $10,-000 exemplary damages, otherwise a new trial would be granted. Both parties excepted to this order of the court. Plaintiff, however, did file a remittitur of $25,000

and judgment was entered for a total amount of $13,700.

Peerless here presents propositions of law attacking the judgment awarding actual damages as well as exemplary damages.

We first discuss the question of actual damages. This is an action of abuse of process and is to be distinguished from an action based upon the malicious prosecution of a civil suit.

■ It seems that in Texas, the fact that a garnishment was "wrongfully" issued and levied gives rise to a cause of action for actual damages, even though the plaintiff in garnishment was not actuated by malice or had probable cause for the belief that grounds for garnishment existed. The garnishment is wrongful if the facts set forth in the affidavit prescribed by Article 4076, Vernon's Civil Statutes, are untrue, Sayeg v. Federal Mortgage Company, Tex.Civ.App., 54 S.W.2d 238, or if the debt or judgment alleged to be the basis for the issuance of the garnishment be nonexistent or legally insufficient to support the writ. Barr v. Cardiff, 32 Tex.Civ.App. 495, 75 S.W. 341; Foster v. Bennett, Tex.Civ.App., 152 S.W. 233.

■ As to actual damages, we hold that under the facts of this case the issuance of the writs was "wrongful" because the judgment sought to be made the basis for the garnishments was legally insufficient for that purpose. This holding makes unnecessary a discussion of the definition of "knowledge" as used by the trial court in connection with Special Issue No. 2.

It is undisputed that the sum of money deposited with the National Bank of Commerce was a primary fund for the discharge of the Peerless judgment against Teas. That matter was determined by this Court in Floboots Corporation v. Teas, Tex.Civ.App., 110 S.W.2d 180, wherein the judgment of the trial court so providing was affirmed. In Peerless Oil & Gas Co. v. Gulf Oil Corporation, Tex.Civ.App., 112 S.W.2d 1083, 1084, it was held that the Peerless judgment against Teas would not support the issuance of the writs of garnishment "until after the primary fund had been exhausted, or had been diminished to such an extent that at the time of the application for writ of garnishment it could be determined, with mathematical certainty, to what extent the primary fund would

not satisfy the judgment in favor of the Peerless Oil & Gas Company."

The record in this case shows conclusively that such showing was not made, but, on the contrary, the judgment was satisfied out of the primary fund.

It therefore follows that the issuance of the writs of garnishment were "wrongful" and actual damages may be recovered.

■ As to the amount of the judgment for actual damages, we have concluded that the evidence supports the jury's findings that the Peerless Company was in possession of sufficient facts concerning Teas' financial situation, methods of operation and holdings in the Smithville area to make said company liable for the special actual damages found by the jury. Wallace v. Finberg, 46 Tex. 35; Foster v. Bennett, Tex.Civ.App., 152 S.W. 233; 17 C.J. 715.

■ We next consider the matter of exemplary damages. For the issuance of the writ of garnishment to be the basis for a recovery of exemplary damages, such issuance must be not only "wrongful," but procured without probable cause and maliciously. The rules applicable to exemplary damages arising as a result of an abuse of judicial process are similar to those governing actions for malicious prosecution of civil or criminal proceedings. Both elements, malice and want of probable cause, must be present in order to sustain a recovery of exemplary damages in an action for abuse of process. The Peerless Company here by its propositions does not directly challenge the conclusion reached by the trial judge from the jury's findings that the writs of garnishment were issued without probable cause. This explanation is made in order that it may be clearly understood that the element of malice is here discussed and not the element of probable cause. Peerless strenuously contends that the element of malice was improperly submitted to the jury and that the jury's findings thereon are without support in the evidence.

■ We conclude that the evidence in this case is sufficient to support the jury's findings that the writs of garnishment were maliciously issued. The action of the Peerless Company in attempting to execute a supersedeas bond for the Plateau Company, its subsidiary, which would prevent the immediate payment of the Peerless judgment against Teas, and thus give an apparent basis for the issuance of writs of garnishment against Teas is a circumstance from which the jury was authorized to infer malice. It is true that there was evidence, which, if believed by the jury, would show that the execution of this bond by Peerless was the result of a good faith effort on the part of Peerless to protect its subsidiary, Plateau, from what it believed to be an erroneous judgment. The conflict of evidence on this point raised a question for the determination of the jury, and that determination is conclusive here.

■ We next consider the manner in which the issue of malice was submitted to the jury. Peerless contends that the case must be reversed because of the trial court's failure to define the term "unlawful act" and the phrase "without reasonable grounds for believing the act to be lawful" as used by the trial court in its submission of special issue No. 3 to the jury.

The substance of the definition of malice given by the trial court has been approved by the Appellate Courts of this State. Carothers v. McIlhenny Co., 63 Tex. 138; Stansell & Younger v. Cleveland, 64 Tex. 660; Cotton v. Cooper, Tex.Civ.App., 160 S.W. 597, affirmed, Tex.Com.App., 209 S.W. 135.

In certain cases a further definition of the term "unlawful act" or "lawful" would be necessary in connection with the definition of malice. Grayce Oil Co. v. Peterson, 128 Tex. 550, 98 S.W.2d 781, where it was held that the term "wrongful" had substantially the same meaning as "unlawful."

In this particular case, however, the "wrongful" or unlawful act involved was the running of the writs of garnishment, and, for the reasons above given, we have held that such act was "wrongful" or "unlawful," and for that reason no error was committed by the trial court in refusing to further define the term "unlawful." Alamo Downs, Inc. v. Briggs, Tex.Civ. App., 106 S.W.2d 733.

■ Complaint is also made of the trial court's failure to submit the issue of malice separately as to Vernon Taylor, President, Thornton Davis, Vice President, and Knox Miller, attorney for Peerless and also the Plateau Oil Company. Peerless suggests that there may have been ill feeling between Miller and Teas, from which it might be inferred that Miller was actuated by malice. It is then contended that Peer-

less could not be bound by the malice of Miller in the absence of a finding that Peerless knew of such malice and ratified Miller's malicious acts. This contention is overruled. The alleged malicious act complained of was the issuance of writs of garnishment as a part of a plan to force a settlement of the judgment obtained by Teas in the Floboots suit. Taylor, individually and as president of Peerless, signed the supersedeas bond above discussed. Davis signed the application for garnishment. Miller was the attorney for Peerless. Under these circumstances it was not necessary to submit the issue of malice separately as to Taylor, Davis and Miller, nor was it necessary to submit the issue of ratification. A case in which corporate action taken upon advice of counsel would be a defense is not presented by the record. Jacobs, Bernheim & Co. v. Crum, 62 Tex. 401; Shannon v. Jones, 76 Tex. 141, 13 S.W. 477.

Peerless also contends that the trial court erred in the admission of certain testimony which tended to show that the company and its president, Taylor, were wealthy. The evidence admitted was an affidavit executed by Taylor in connection with the supersedeas bond given in the Floboots case and matters brought out by examination of witnesses relative thereto. The supersedeas bond proper was admitted without objection. This bond was for the sum of $72,500, and in itself indicated that the sureties were possessed of considerable wealth.

The affidavit was in effect a part of the supersedeas bond and contains recitations showing that the Peerless Company was a holding company owning at least fifty per cent of capital stock of Plateau Oil Company, an appellant in the Floboots case. The affidavit contained the statement that the Peerless Company and affiant, Taylor, were each worth in excess of $75,000.

This affidavit was admissible upon a vital part of Teas' theory of the case, and was therefore properly received in evidence. The fact that it indicated that Taylor and Peerless possessed considerable wealth did not render the affidavit inadmissible. Houston Cotton Oil Company v. Trammell, 96 Tex. 598, 74 S.W. 899.

Peerless further contends that the trial court committed error in receiving in evidence excerpts from the briefs filed in this Court upon the former appeals heretofore mentioned. The statements contained in the briefs were of course privileged in the sense that an action of libel would not lie because of such statements. Kruegel v. Cockrell & Gray, Tex.Civ.App., 151 S.W. 352. It seems, however, that in malicious prosecution suits, the conduct of the defendant in the case upon which the malicious prosecution is based is admissible in evidence. Suhre v. Kott, Tex.Civ.App., 193 S.W..417; Meyer v. Viereck, Tex.Civ. App., 286 S.W. 894; Annotation, 12 A.L.R. 1259–1263; Wilmer v. Rosen, 102 W.Va. 8, 135 S.E. 225, 49 A.L.R. 261, and annotation thereto; 18 R.C.L. 31, 32. As above pointed out, a case for exemplary damages for abuse of process is very similar to one for malicious prosecution. According to Teas' theory of this case, the judgment in the Floboots case was superseded by Plateau, a Peerless subsidiary, in order to prevent payment of that judgment and create an apparent basis for the issuance of the writs of garnishment. He had the right to introduce evidence in support of that theory, and considering the intimate connection between the Peerless and Plateau Companies, the fact that both companies had the same officers and attorneys, we have concluded that the evidence complained of was properly admitted. In cases in which the element of malice is in issue, a relatively wide range of evidence is permitted. Shaw v. Cone, Tex.Civ.App., 56 S.W.2d 667; 20 Am.Jur. 321.

This leaves to be discussed only the Peerless proposition that a new trial must be had because of the excessiveness of the verdict for exemplary damages, and the cross-assignments of Teas.

Teas contends that this Court should reverse the trial court's judgment of $10,-000 exemplary damages and render judgment for $30,600 (the amount of exemplary damages prayed for by Teas) upon the verdict of the jury.

Much of Teas' brief on his cross-assignments is devoted to the proposition that he is entitled to present that contention here despite the fact that he filed a remittitur in the trial court under the circumstances above set out. We believe it would be the duty of this Court to render judgment here on the verdict of the jury, providing we should hold that an award of $30,000 was not excessive under the facts of this case.

This Court has no authority to substitute different findings for those of the jury upon disputed issues of fact. Dolen v. Lobit, Tex.Com.App., 262 S.W. 731. We must accept the jury's findings supported by the evidence as true. Applying this rule to the facts and findings of this case, we conclude that a recovery of exemplary damages may be sustained. A jury's finding .as to the amount of damages stands upon a somewhat different basis than a finding of the existence or non-existence of a particular disputed fact. World Oil Co. v. Hicks, 129 Tex. 297, 103 S.W.2d 962. The trial court held that the jury's finding as to the amount of exemplary damages was excessive. That holding is approved by us. An award of $30,000 exemplary damages can not be sustained upon the record presented here.

In view of this holding, the case of World Oil Co. v. Hicks, supra, is controlling. The procedure followed by the trial court in this case was that discussed and approved in the Hicks case. The opinion in that case also disposes of the Peerless contention that a new trial must be granted because of the excessiveness of the verdict. Further discussion of that opinion would serve no useful purpose.

The judgment of the trial court is affirmed.