Affirmed and Majority and Dissenting Opinions filed February 24, 2009








Affirmed
and Majority and Dissenting Opinions filed February 24, 2009.

 

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00069-CV

____________

 

XTO ENERGY INC., Appellant

 

V.

 

SMITH PRODUCTION INC., Appellee

 



 

On Appeal from the 281st
District Court

Harris County, Texas

Trial Court Cause No. 2004-68579

 



 

D I S S E N T I N G    O P I N I O N

The majority concludes that a receiving party cannot change
its election within thirty days after receipt of the notice because the Notice
Period expires upon the earlier of (a) thirty days after receipt of the
Notice, or (b) the date on which the receiving party responds.  Because I
do not believe this interpretation is consistent with the contracts= language, which
is ambiguous at best, I respectfully dissent. 








I.  Applicable Principles of
Contract Construction

In determining whether the language of a contract is
ambiguous, we look to the contract as a whole, in light of the circumstances
present when the contract was executed.  Sun Oil Co.  (Del.) v. Madeley,
626 S.W.2d 726, 731 (Tex. 1981);[1]
see also Lenape Res. Corp. v. Tenn. Gas Pipeline Co., 925 S.W.2d 565,
574 (Tex. 1996) (op. on reh=g). (A[A] court should
construe a contract from a utilitarian standpoint, bearing in mind the
particular business activity sought to be served.@).  We first
examine the words of the contract, and considering the business activity to be
served, determine whether both proffered interpretations are reasonable.  XCO
Prod. Co. v. Jamison, 194 S.W.3d 622, 628 (Tex. App.CHouston [14th
Dist.] 2006, pet. denied) (sub. op.).  If both interpretations are reasonable,
then the contract is ambiguous and there is a genuine issue of material fact
regarding the parties= intent.  J.M. Davidson, Inc. v.
Webster, 128 S.W.3d 223, 229 (Tex. 2003); Columbia Gas Transmission
Corp. v. New Ulm Gas, Ltd., 940 S.W.2d 587, 589 (Tex. 1996).  This is so
even if it appears that one interpretation is more reasonable than another.  See
Heritage Res., Inc. v. NationsBank, 939 S.W.2d 118, 121 (Tex. 1996)
(stating that a contract is ambiguous if it is Areasonably
susceptible to more than one interpretation@); Coker v.
Coker, 650 S.W.2d 391, 393 (Tex. 1983); cf. In re D. Wilson Constr. Co.,
196 S.W.3d 774, 782 (Tex. 2006) (holding that agreements were Anot susceptible to
more than one reasonable interpretation and are therefore not ambiguous@).








Ambiguity must be evident when the contract is read in
context of surrounding circumstances, not after parol evidence of intent is
admitted.  Nat=l Union Fire Ins. Co. of
Pittsburgh, Pa. v. CBI Indus., Inc., 907 S.W.2d 517, 521 (Tex. 1995) (per
curiam); Williams v. Williams, 246 S.W.3d 207, 211 (Tex. App.CHouston [14th
Dist.] 2007, no pet.).  Stated differently, although parol evidence of the
parties= intent is not
admissible to create an ambiguity, see National Union, 907 S.W.2d at
520, the contract may be read in light of the surrounding circumstances to
determine whether an ambiguity exists.  Balandran v. Safeco Ins. Co. of Am.,
972 S.W.2d 738, 741 (Tex. 1998) (citing Columbia Gas, 940 S.W.2d at 589,
and Nat=l Union, 907 S.W.2d at
520).  Such circumstances include Athe commonly
understood meaning in the industry of a specialized term, which may be proven
by extrinsic evidence such as expert testimony or reference material.@  XCO Prod. Co.,
194 S.W.3d at 627B28; see also Floboots Corp. v. Teas,
110 S.W.2d 180, 183 (Tex. Civ. App.CSan Antonio 1937,
writ dism=d) (holding trial court=s finding that
slate, indurated shale, and quartzite are Ametamorphic
formations@ was supported by properly-admitted expert testimony
concerning the meaning of those terms).  However, we may not rewrite the
contract Aor add to its language under the guise of
interpretation.@  Helmerich & Payne Int=l Drilling Co. v.
Swift Energy Co., 180 S.W.3d 635, 641 (Tex. App.CHouston [14th
Dist.] 2005, no pet.).

II.  Language of the Joint Operating Agreements

The contract provisions at the heart of this dispute
provide in relevant part as follows:

1.  Proposed Operations:  Should any party
hereto desire to drill any well on the Contract Area other than the [initial
well], . . . the party desiring to drill . . . such a well shall give the other
parties written notice of the proposed operation, specifying the work to be performed,
the location, proposed depth, objective formation and the estimated cost of the
operation.  The parties receiving such a notice shall have thirty (30) days
after receipt of the notice within which to notify the party wishing to do the
work whether they elect to participate in the cost of the proposed
operation. . . . Failure of a party receiving such notice
to reply within the period above fixed shall constitute an election by
that party not to participate in the cost of the proposed operation.








If all parties elect to participate in such a
proposed operation, Operator shall, within ninety (90) days after expiration of
the notice period of thirty (30) days (or as promptly as possible after the
expiration of the forty-eight (48) hour period when a drilling rig is on
location, as the case may be), actually commence the proposed operation and
complete it with due diligence at the risk and expense of all parties hereto;
provided, however, said commencement date may be extended upon written notice
of same by Operator to the other parties, for a period of up to thirty (30)
additional days if, in the sole opinion of Operator, such additional time is
reasonably necessary to obtain permits from governmental authorities, surface
rights (including rights-of-way) or appropriate drilling equipment, or to
complete title examination or curative matter required for title removal or
acceptance.  Notwithstanding the force majeure provisions of Article XI, if the
actual operation has not been commenced within the time period provided
(including any extension thereof as specifically permitted herein) and if any
party hereto still desires to conduct said operation, written notice proposing
same must be resubmitted to the other parties in accordance with the provisions
hereof as if no prior proposal had been made.

2.  Operations by Less than All Parties:  If
any party receiving such notice as provided in Article VI.B.1. . . . elects not
to participate in the proposed operation, then, in order to be entitled to the
benefits of this Article, the party or parties giving the notice and such other
parties as shall elect to participate in the operation shall, within ninety
(90) days after the expiration of the notice period of thirty (30) days . . . actually
commence the proposed operation and complete it with due diligence.

If less than all parties approve any proposed
operation, the proposing party immediately after the expiration of the
applicable notice period, shall advise the Consenting Parties of the total
interest of the parties approving such operation and its recommendation as to
whether the Consenting Parties should proceed with the operation as proposed. 
Each Consenting Party, within forty-eight (48) hours (exclusive of Saturday,
Sunday and legal holidays) after receipt of such notice, shall advise the
proposing party of its desire to (a) limit participation to such party=s interest as shown on Exhibit AA@ or (b) carry its proportionate part of
Non-Consenting Parties= interests, and failure to advise
the proposing party shall be deemed an election under
(a). . . . The proposing party, at its election, may withdraw
such proposal if there is insufficient participation and shall promptly notify
all parties of such decision.








The entire cost and risk of conducting such
operations shall be borne by the Consenting Parties in the proportions they have
elected to bear same under the terms of the preceding
paragraph. . . . Upon commencement of
operations . . . of any such well by Consenting Parties
in accordance with the provisions of this Article, each Non-Consenting Party
shall be deemed to have relinquished to Consenting Parties, and the
Consenting Parties shall own and be entitled to receive, in proportion to their
respective interests, all of such Non-Consenting Party=s interest in the well and share of
production therefrom until
the proceeds of the sale of such share . . . shall equal
the total of the following: . . . .

Joint
Operating Agreements, Art. VI.B. (emphasis added).  From this language, the
majority draws dispositive inferences with which I disagree.

III.  Contract Defines Notice Period=s Expiration Date


Under the majority=s interpretation,
the Notice Period is subject to several different expiration dates.  First,
there is the thirty-day deadline described in the contract; this could be
called the ADefault Expiration Date.@  In addition to
the thirty-day period described in the contracts, however, the majority has
discovered two other expiration dates.  First, there is the date that could be
considered the AResponder=s Expiration Date.@  According to the
majority, A[o]nce a receiving party timely gives notice of its
election regarding the drilling operation by properly replying within the
thirty days, the Notice Period has expired as to that party.@[2]  Building on this
inference, the majority next asserts that A[o]nce all parties
have communicated their election regarding the proposed operation, the Notice
Period has expired.@[3]  This could be
considered a AGeneral Expiration Date.@  








I have discovered no authority for the existence of a
General or Responder=s Expiration Date in the language of the
contracts.  Although the Notice Period can expire for the various receiving
parties on different days, the parties have unambiguously specified the method
by which these dates are calculated.  Under the terms of the joint operating
agreements, the expiration date of the Notice Period is determined not by the
date on which a party replies, but by the date on which the party received the
notice of the proposed operations:   AThe parties
receiving such a notice shall have thirty (30) days after receipt of the
notice within which to notify the party wishing to do the work whether they
elect to participate in the cost of the proposed operation.@ (emphasis
added).  This court cannot assert its contrary inferences as facts, as the
majority has done, without rewriting the contract.  

The contractual provisions at issue describe no
circumstance under which the thirty-day Notice Period expires in less than
thirty days; to the contrary, the parties have agreed that this is the period Afixed@ for the receiving
party to reply: AFailure of a party receiving such notice
to reply within the period above fixed shall constitute an election by
that party not to participate in the cost of the proposed operation.@ (emphasis
added).  To fix means to A[a]djust or
regulate; determine; settle; make permanent.  [The] [t]erm imports finality;
stability; certainty; definiteness.@  Black=s Law Dictionary 637 (6th ed. 1990).[4] 
The majority=s interpretation, however, eliminates the certainty to
which the parties agreed.

The inferences drawn by the majority are inconsistent with
other express terms of the parties= agreements as
well.  Under Article VI.B.2., for example, if any receiving party elects not to
participate in the proposed operations, then the parties who have chosen to
participate Ashall, within ninety (90) days after the expiration of
the notice period of thirty (30) days . . . actually
commence the proposed operation . . . .@ (emphasis
added).  Because the phrase of thirty (30) days Acan be given a
definite or certain legal meaning,@ it is unambiguous
and thus, this court should afford the words their plain meaning.  See Am. 
Mfrs. Mut. Ins. Co. v. Schaefer, 124 S.W.3d 154, 157 (Tex. 2003).  Under
the majority=s interpretation, however, the Notice Period expires
in a week if all receiving parties respond within seven days.  See ante,
at 8B9.  Thus,
application of the majority=s interpretation would result in a direct
conflict with the unambiguous language of the contract. 








The majority=s rationale for
rejecting XTO=s interpretation of the contract is equally flawed. 
The majority states that XTO=s suggested construction Aconflicts with
language indicating that, once all of the receiving parties have given notice of
their respective elections, the Notice Period is over.@[5]  As previously
discussed, however, the language of the contracts expressly provides that the
Notice Period expires thirty days after the receiving party receives the
notice.  In light of these unequivocal terms fixing the end of the Notice
Period, the contracts cannot be said to support an inference that the Notice
Period expires on the earlier of thirty days or the date on which the
receiving party makes an election.  

The majority also reasons that, 

[I]f a party could change its
election if the other parties had not materially changed their positions in
reliance on the initial election, it is not clear why the ability to exercise
such a privilege would be limited to thirty days after receipt of the proposing
party=s notice.  If a
party inadvertently sent notice of its election to participate 33 days after
receiving notice and if no party had materially changed its position in
reliance on the initial deemed election of non-participation, it is not clear
why the passage of thirty days would stop a party from changing its election to
one of participation.  

Ante, at 10.  This
confusion arises only because the majority has disregarded the actual language
of the contracts, which expresses the parties= agreement on this
point in unambiguous terms: AThe parties receiving such a notice shall
have thirty (30) days after receipt of the notice within which to notify
the party wishing to do the work whether they elect to participate in the cost
of the proposed operation.@  The parties= repeated
statements that the Notice Period for each receiving party ends thirty days
after receipt of the noticeCnot earlier, not laterCcould hardly be
clearer.  The passage of thirty days would stop a party from changing its
election because the contract says it does.

 








A.      Case Law
Follows Contractual Expiration Dates 

Finally, the authorities on which the majority relies do
not support its reasoning.[6] 
In Nearburg v. Yates Petroleum Corp., Nearburg notified Yates on
December 1, 1994 of his proposal to drill a well.  1997-NMCA-069, & 5, 123 N.M.
526, 943 P.2d 560.  Yates did not respond within thirty days but instead
obtained his own drilling permit.  Id.  On January 11, 1995, Yates wrote
to Nearburg, proposing to drill the well himself.  Id.  Nearburg sued
for, inter alia, Aan order for specific performance
requiring Yates to act as a non-consenting party and to refrain from interfering
with Nearburg=s proposed drilling . . . .@  Id. at & 6.  Yates
counterclaimed, seeking a declaratory judgment that Yates was the operator of
the proposed well and a consenting party under the operating agreement.  Id. 
According to Yates, he could change his election any time before
Nearburg began operations.  Id.  at & 11.  The New
Mexico Court of Appeals found in favor of Nearburg, stating, AWe see no
indication that the parties to the operating agreement intended to allow a
change in election after the thirty day notice period.@  Id. at & 24 (emphasis
added).  The court further explained that Yates=s Aanalysis is
inconsistent with express contract language, because it virtually ignores the
provision in Article VI(B)(1) requiring an election to be made within thirty
days.@  Id. at & 12 (emphasis
added) (citing Kirkpatrick v. Introspect Healthcare Corp., 845 P.2d 800,
805 (N.M. 1992) (holding that the interpretation of a contract cannot ignore
the contract=s express provisions)).  Thus, Nearburg undermines
rather than supports the majority=s analysis.








The same is true of Valence Operating Co. v. Dorsett. 
164 S.W.3d 656 (Tex. 2005).  In Valence, the issue was whether the
parties= joint operating
agreement Arequire[d] a thirty-day notice period to expire
before the operator [could] commence work on the proposed operations.@  Id. at
658. (emphasis added).  The court concluded that Valence could begin operations
less than thirty days after notifying the parties of its proposed operations,
but stated, Athe risk of early commencement of such operations
falls entirely on the operator because if none of the working interest owners
consent to participation within thirty days, the operator bears the full cost
of operations.@  Id. at 663.  The court provided no exception
for circumstances in which the receiving parties= time for electing
to consent to participation in the operation is less than thirty days.

Although the dispute addressed in Oxley v. General
Atlantic Resources., Inc. is much closer to the issue presented in
this case and requires much the same analysis, the majority dismisses it.  936
P.2d 943, 944B46 (Okla. 1997).  In Oxley, a provision in the
parties= joint operating
agreement provided that A[s]hould a sale be made by Operator of its
rights and interests, the other parties shall have the right within sixty (60)
days after the date of such sale, by majority vote in interest, to select a new
Operator.@ Id. at 944.  The issue presented was whether a
party could change its vote for a successor operator within that sixty-day
period.  Id. at 944B45.  The court concluded, AThe JOA does not
expressly address whether a party can change its vote for a successor operator,
which creates an ambiguity and requires construction.@  Id. at
945.  Due primarily to contested facts regarding the custom and usage in the
industry,[7]
the Oklahoma Supreme Court could not resolve the ambiguity, and it remanded the
case.  Id. at 946.  Although Oxley is not binding on this court,
its reasoning is sound, and I similarly would conclude that, at a minimum, a
fact issue is present in this case.








In sum, the majority has chosen to add some words to the
contract rather than others. Although it is true that the contract provisions
do not state that a receiving party has Athirty days to
give notice of an election and to give notice of a change in a prior election,@[8] it is equally
true that the contract states no circumstances under which the thirty-day
Notice Period expires in less than thirty days.

B.      Contract
is Ambiguous

As in Oxley, the issue here is whether a party can
change its decision within the time limit fixed by the contracts for making the
decision.  The contracts here, like the contract in Oxley, do not
expressly state the answer.  Nevertheless, courts must interpret a contract by Aascertaining the
true objective intentions of the parties, based on the contract language.@  SAS Inst.,
Inc. v. Breitenfeld, 167 S.W.3d 840, 841 (Tex. 2005) (per curiam) (citing Coker,
650 S.W.2d at 393).  The intent of a contract is not changed simply because the
circumstances do not precisely match the anticipated scenarios.  Id. 
Because the interpretation urged by XTO is reasonable, the contracts are, at
best, ambiguous.  Thus, I would reverse and remand the case for further
proceedings, and in light of that decision, I would not reach the question of
whether the trial court properly excluded or limited the purpose for which the
Barnhill affidavits were admitted.[9]


 

 

 

/s/      Eva M. Guzman

Justice

 

Judgment rendered and Majority and
Dissenting Opinions filed.

Panel
consists of Justices Frost, Seymore, and Guzman.









[1]  AConsideration
of the facts and circumstances surrounding the execution of a contract,
however, is simply an aid in the construction of the contract=s language.  There are limits.  For example, when
interpreting an integrated writing, the parol evidence rule circumscribes the
use of extrinsic evidence.@  Id. 





[2]  Ante, at 8.





[3]  Ante, at 8.





[4]  Although there are more recent editions of Black=s Law Dictionary, the sixth edition was released in
1990, the same year in which XTO=s
predecessor-in-interest signed the first joint operating agreement.  The second
joint operating agreement repeated the same language.  This edition therefore
is more likely to express the common understanding of the ordinary meaning of
the words in light of the circumstances present when the contract was
executed.  See Sun Oil Co, 626 S.W.2d at 731. 





[5]  Ante, at 10.





[6]  In light of the parol evidence rule, I also am not
persuaded that it is appropriate to take notice of the existence or contents of
other model form operating agreements.





[7]  In addition, factual determinations were necessary
to address the argument that a candidate operator relied to its detriment on
the receiving party=s original vote.  This argument was of secondary
importance, because if the terms of the contract did not permit a party to
change its vote, then the court would not reach the question of whether
equitable grounds prevented a party from changing its vote in a particular
case.  See id. at 946B47.





[8]  Ante, at 7.





[9]  Like the majority, I would not reach the question of whether XTO=s interpretation is the only
reasonable construction of the contractual language because, as the majority
has explained, the ruling on XTO=s motion for partial summary judgment is not properly
before this court for review.  See ante, at 5, n.3.