## CORRIGAN v. SHELL PETROLEUM COR-PORATION.

### No. 7880.

Court of Civil Appeals of Texas. Austin.
July 12, 1933.

Haag & Stubbeman, of Midland, for appellant.

Thompson, Mitchell, Thompson & Young, of St. Louis, Mo., R. H. Whilden, of Houston, and O. P. Berry, of St. Louis, Mo., for appellee.

BLAIR, Justice.

Appellant sued appellee for the willful taking and conversion of his three-eighths interest in the royalty oil produced by appellee under a certain oil and gas lease, alleging that, contrary to the terms of the lease requiring appellee to deliver the royalty oil to his credit in kind in the pipe line, appellee appropriated it; and that because of the fluctuating value of the oil the measure of damages was the highest intermediate market value of the oil between the time of its conversion and the filing of this suit. Appellee denied that it had willfully taken the oil, and alleged that it handled the same in accordance with the prevailing custom in the oil industry for the producer to take all oil produced and pay the royalty owners its market value as of date it was run in the pipe line; and that appellee had tendered appellant the market value of his oil as of date it was run in the pipe line.

The court refused the highest intermediate market value of the oil as the measure of damages applicable, but instructed the jury to return a verdict for the market value of the oil as of date it was run in the pipe line. Judgment was accordingly rendered for appellant for $1,063.17 instead of $6,344.-38 as prayed.

By this appeal appellant seeks to invoke the rule that, where the conversion of property is attended with willful wrong, and the property is of changing or fluctuating value, the measure of damages is the highest market value of such property between the date of the conversion and the filing of the suit. Early-Foster Co. v. Mid-Tex Oil Co. (Tex. Civ. App.) 208 S. W. 224.

We have reached the conclusion that the rule stated is not applicable to the facts of this case. The word "willful," as used in the rule, is not given its ordinary meaning of an act of conscious volition as contended for by appellant. The term "willful" implies bad faith or evil intent on the part of the doer of the act. It means something more than the mere doing of the act knowingly. It is the doing of the act or thing for the purpose of doing a wrong to another.

In the case of Felton v. United States, 96 U. S. 699, 24 L. Ed. 875, it is held that "doing or omitting to do a thing 'knowingly and wilfully' implies not only a knowledge of the thing, but a determination with an evil intent to do it or to omit doing it." This rule is quoted in the case of State v. Alcorn, 78 Tex. 387, 14 S. W. 663, where the words "knowingly" and "willfully" are used conjunctively, and this authority and others discussing the question seem to give the word "willfully" an additional or different meaning from the word "knowingly." If such distinction be recognized in the instant case, it becomes apparent from the evidence adduced that appellee did not willfully take and appropriate the royalty oil of appellant.

■■ The evidence shows that the royalty oil of appellant was produced between June 3 and September 11, 1931, and that all transactions herein referred to occurred during that year. On July 27, appellant wrote appellee calling attention to the fact that he owned a three-eighths interest in the royalty oil, and that, "while I judge your policy is to review the title before sending out division orders, and no doubt have me credited with this interest, I am writing this to advise you

of my address." No abstract of title was furnished by appellant to appellee, but appellee seems to have recognized appellant's interest at all times.

On September 1, appellee mailed appellant a division order for his royalty oil interest. On September 20, after appellant had disposed of his royalty oil interest except the oil already run between the dates aforementioned, he returned the division order unsigned complaining of the price fixed therein for the oil. On September 30, appellee wrote appellant that the price fixed in the division order was the price for each day's receipts paid by the Humble Oil & Refining Company in the field in question. On October 3, appellant wrote appellee complaining of the price as fixed by the Humble Company, but requested information as to what price was paid by the Humble Company during the time the well was "run open." The expression "run open" was used to designate the period the well was run full capacity under order of the railroad commission because of a fire in an adjoining well, and during which time most of the oil in controversy was run. On October 26, appellee wrote appellant furnishing the information requested. On November 23, appellant wrote appellee that the price paid by the Humble Company seemed to be inadequate, and "I suggest that, in so far as our three-eighths royalty interest to date of September 11, 1931, is concerned, you handle same according to the terms of the oil and gas lease under which the lease is being operated."

The evidence further showed that it was the custom in the oil industry, particularly in the field in question, for the producer of the oil from a lease to run the entire production for his account in the pipe line and give credit to the royalty owners according to their respective interests at the market value as of date of the run in the pipe line. Appellee handled appellant's oil in this manner, except the first oil produced when there were no pipe line connections and during which time appellee gathered the oil and loaded it in tank cars for transportation to the refineries. It was also shown that the pipe line company would not credit the interest of royalty owners, but credited the entire run to the credit of the producer or the purchaser of the oil from a lease.

We sustain the conclusion of the trial court that there was not a willful taking and conversion of the royalty oil of appellant; and that therefore his proper measure of damages was the market value of the oil at the time it was run in the pipe line. Appellant was experienced in the oil industry and was shown to be familiar with the custom in that industry as to handling royalty oil. His first letters to appellee showed that he expected this custom to be followed in handling his royalty oil, and the only complaint made by him was that the price fixed by the division order sent was inadequate. He did not request appellee to handle the oil in accordance with the terms of the lease until after he knew that appellee had handled the oil in accordance with the prevailing custom in the oil industry, particularly in the field in question, and after he had disposed of his royalty interest except that run between the dates mentioned. There is nothing in the evidence to show a willful taking of the royalty oil of appellant within the meaning of the term "willful" as above defined. The following cases are cited in support of our conclusions herein: Saner-Whiteman Lbr. Co. v. Tex. & N. O. R. Co. (Tex. Civ. App.) 282 S. W. 267; Id. (Tex. Com. App.) 288 S. W. 127; Masterson v. Goodlett, 46 Tex. 402; Voshell v. Indian Territory Illuminating Oil Co.,[1] decided by district court of McPherson county, Kan., and published in Mid-Continent Bulletin for June, 1932; Felton v. United States, 96 U. S. 699, 24 L. Ed. 875; State ex rel. Hickman v. Alcorn, 78 Tex. 387, 14 S. W. 663; Early-Foster Co. v. Mid-Tex Oil Mills (Tex. Civ. App.) 208 S. W. 224. These cases were decided upon facts similar to the facts in the instant case, and some of them present even stronger facts of willful taking and conversion than the instant case, and in each case the rule of highest intermediate market value of the property converted was held not to be the proper measure of damages.

The court did not err in admitting over appellant's objection the testimony as to the custom in the oil industry in handling royalty oil, including in this connection the testimony relating to the sending of division orders to be signed by royalty owners. This evidence was not admissible for the purpose of showing the terms of the contract between appellant and appellee, but as throwing light upon the issue as to whether the taking of the oil was willful and as to whether the conversion was attended with willful wrong, which was the only controverted issue in the case. The facts put in evidence as to the custom in the oil industry of running all oil produced from a lease in the pipe line to the credit of the producer, and the sending of division orders in that connection to royalty owners for their signature, were explanatory of the conduct and acts of appellee, and clearly reflected its purpose and intent and the state of its mind. Such evidence tended to show that appellee did not willfully purpose to injure or wrong appellant by the manner in which it handled his royalty oil. It is manifest that, if appellee handled the oil in accordance with the custom in the oil industry, such evidence, in the very nature of the issue involved, was fit and appropriate proof that appellee did not willfully wrong

[1] For opinion of Supreme Court, see 137 Kan. 160, 19 P.(2d) 456.

or intend to injure appellant in so handling his royalty oil. Horbach v. State, 43 Tex. 242; 22 C. J. 192, § 157; 17 Texas Jurisprudence, 408, § 144, where it is said: "A witness may not testify as to the intent or motive of another person, but may testify as to facts of which he has knowledge tending to show such intent. The intention accompanying an act may be inferred from other evidence, and ordinarily the fact that another person acted with an evil intent must be shown by circumstantial evidence."

The judgment of the trial court will be affirmed.

Affirmed.