## BLANTON v. SHERMAN COMPRESS CO.
### No. 14601.

Court of Civil Appeals of Texas. Dallas.
Feb. 13, 1953.

Rehearing Denied March 13, 1953.

Joe A. Keith and Paul N. Brown, both of Sherman, for appellant.

Abernathy & Abernathy, McKinney, and Freeman, Wolfe, Henderson & Bryant, Sherman, for appellee.

DIXON, Chief Justice.

This is an appeal from an order overruling appellant's plea of privilege seeking to have the suit transferred to appellant's residence, Cooke County, Texas. Appellee seeks to maintain venue in Grayson County on the ground that appellant committed a fraud in Grayson County, within the meaning of subdiv. 7, of Art. 1995, R.C.S., Vernon's Ann.Civ.St. art. 1995, subd. 7. Hereafter appellee will be referred to as plaintiff and appellant as defendant.

Plaintiff, a corporation, operates a compress at Sherman, Texas. It alleges that it handles two types of cotton: concentrated cotton and transit cotton. Its tariff for handling the latter type is much less than for handling the former.

L. O. Blanton, Sr., was the president of the corporation during all the time involved herein. Defendant Roy L. Blanton is a son of L. O. Blanton, Sr., but at all times involved herein he was a stranger to the corporation so far as any official connection is concerned.

L. O. Blanton, Sr., president of the corporation, lived in Dallas and did not often visit the company's office in Sherman; in fact most of the officers lived elsewhere than in Sherman. S. A. Grafft, a resident of Sherman, was the company's manager. Plaintiff's pleadings of the misrepresentation relied on to constitute fraud are as follows:

"At said time and place the defendant represented to the said Grafft, and to this plaintiff, that his father had agreed that the defendant would be charged transit rates for his cotton, though the cotton was to be handled and treated as concentrated cotton."

Defendant's main point on appeal is that, viewed in a light most favorable to plaintiff, the testimony offered in support of the above pleading fails as a matter of law to make out a case of actionable fraud. This contention, if correct, would require us to reverse the order of the trial court overruling defendant's plea of privilege. Austin v. Grissom-Robertson Stores, Tex.Civ.App., 32 S.W.2d 205.

Plaintiff does not claim that defendant stated expressly in exact words that his father had given instructions for his cotton to be handled at the lower rate. What plaintiff does claim is that defendant's language means the same thing and that plaintiff's manager, Grafft, under the circumstances properly so interpreted his statement.

We shall not attempt to reproduce all the evidence touching the point. Here is a portion of Grafft's testimony:

"Q. Did he tell you he had talked with his father about the cotton? * * * A. Yes, sir. * * *

"Q. Mr. Grafft, state whether or not he caused you to believe that he had his father's permission to receive concessions on that cotton. A. He did. * * * Roy came to the compress and told me that he expected to handle quite a lot of cotton through Sherman; that he had talked with his father, that we would get the weighing and compression and/or flat removal if the cotton moved out uncompressed. * * * I was under the impression that that was Mr. Blanton's instructions to me of what Roy told me.

"Q. * * * State whether or not any concessions were made to Roy Blanton on cotton handled by the Sherman Compress for that season. A. Yes. sir.

"Q. What were those concessions. A. The handling and the storage charges were waived. * * *

"Q. Mr. Grafft, had you known that Roy Blanton did not have his father's permission to receive these concessions, state whether or not the concessions would have been granted. * * * A. I wouldn't have granted any concession without authority from someone that I was working for; Mr. Blanton or someone else, some of the other officials."

Grafft also testified that Roy Blanton, upon his father's instructions, had been granted similar concessions during the season of 1949–50, but that also upon the father's instructions the concessions had been withdrawn before the season was over; that no such reduction in tariff had ever been made without authority from L. O. Blanton, Sr.; that he did not think it was unusual for these concessions to be made to Roy Blanton, but that he thought it was just another instance of the same thing that had been done before—that L. O. Blanton, Sr., was reducing the charges to be made to his son; that during the months that followed, during the cotton season, Roy Blanton and his brother Don Blanton, an employee of Roy Blanton, repeatedly advised Grafft that he was not to charge storage on defendant's cotton; that after the season was over he learned that L. O. Blanton, Sr., had not authorized the lower charges for his son;

so in 1951 he had sent a bill to Roy Blanton for the difference, and that he had talked with Roy Blanton about the matter.

Again we quote from the testimony:

"Q. State what was said. A. Roy asked me what I told them—of course, referring to the Board of Directors, I assume—and I told Roy that I told them just what he had told me, that he had talked with his father and that I was to handle the cotton on the transit basis, that is, waive the handling of the (and the) storage.

"Q. And what did he say at that time? A. Roy told me at that time that his father had not told him just exactly what to do—for him to see me and that whatever arrangements he made with me would be satisfactory.

"Q. Prior to that time in July 1951, had he ever indicated to you in any way that he did not have his father's permission? A. No, sir."

■ Undoubtedly the general rule, as plaintiff contends, is that fraud will not be presumed, Whitsel v. Hoover, Tex.Civ. App., 120 S.W.2d 930 (wr.dis.); and that where facts are susceptible of contrary inferences, honesty and fair dealing rather than fraud and deceit will be preferred. Fletcher v. Ely, Tex.Civ.App., 53 S.W.2d 817 (wr.ref.); Hawkins v. Campbell, Tex. Civ.App., 226 S.W.2d 891 (wr.ref. N.R.E.).

■ However we believe the circumstances here call for the application of a different rule which has found support in respected authority. As said in 37 C.J.S., Fraud, § 17, p. 251: "* * * a representation literally true is actionable if used to create an impression substantially false".

■■ We find no Texas cases directly in point, but there are utterances from our courts which point in that direction. As was said in Ten-Cate v. First National Bank, Tex.Civ.App., 52 S.W.2d 323, 326, "Fraud is deducible from artifice and concealment as well as from affirmative conduct of a character to deceive. In 25 Corpus Juris, p. 1066, under title of 'Fraud,' it is said: '* * * The plainest case of false representation is the telling of a deliberate and intentional lie. * * * But a representation need not be a direct lie in order to constitute remedial fraud; the false representation may consist in a deceptive answer, or any other indirect but misleading language." See also 20 Tex. Jur. 158, 159.

In the California case of Sullivan v. Helbing, 66 Cal.App. 478, 226 P. 803, 805, defendants, to induce an exchange of real estate, expressly represented that the property was under present rental of $155 per month. It was admitted that the lease agreement did provide for such rental, and further that the rent was secured by chattel mortgage on certain machinery. These representations were true. But defendants failed to mention that the tenant had never paid any such sum, nor any sum greater than $135 per month, the difference in amounts having been rebated by defendants. The court held the facts constituted actionable fraud and allowed a recovery in damages. In so deciding, the court said: "Fraudulent representations may consist of half-truths calculated to deceive."

In the Colorado case of Cahill v. Readon, 85 Colo. 9, 273 P. 653, the defendant represented that there had been an oil boom which had subsided, and that values had become stabilized. This was literally true. But there was a catch in the statement; the value had been stabilized at zero, whereas the statement was made with the intent to convince plaintiff that it was stabilized at $100 per month. The court held that this was actionable fraud.

In Crompton v. Beedle, 83 Vt. 287, 75 A. 331, 334, 30 L.R.A.,N.S., 748, the court with approval quotes Lord Campbell in an English equity case: That not only a single word, but "a nod or a wink or a shake of the head, or a smile from the purchaser, might defeat the application of the principle that mere reticence on the part of a purchaser does not in law amount to fraud."

■ In the case at bar we think that the defendant's utterances taken together with all the surrounding circumstances shown in

the record, raised a fact question, entitling plaintiff to a trial on the merits on the issue of fraud.

We are aware that in Texas intent is not ordinarily an essential element in fraud. But there are exceptions to the rule. " * * * the cases defining fraudulent concealment frequently include the terms 'knowledge' and 'intent.' Indeed the word 'concealment' implies a suppression of that which is known." 20 Tex.Jur. 50. See also Compagnie Des Metaux Unital v. Victoria Mfg. Co., Tex.Civ.App., 107 S.W. 651. We believe that intent is inherent in the very nature of the fraud sought to be proved by plaintiff in the case now before us. If there was no intent, there was no actionable fraud. As has been well said, "Recovery cannot be had for a true statement misunderstood *without fault or design of the speaker*". (Emphasis ours.) 37 C. J.S., Fraud, § 17, p. 251.

Intent, being a state of mind, is often difficult to prove. It has been said that a person's state of mind cannot be proven by direct evidence from others. But this does not render the matter incapable of proof. The presence or absence of a certain state of mind may be proven by circumstances. Dallas Joint Stock Land Bank v. Lancaster, Tex.Civ.App., 91 S.W.2d 890; Corrigan v. Shell Petroleum Corporation, Tex.Civ.App., 62 S.W.2d 663; Peerless Oil & Gas Co. v. Teas, Tex.Civ.App., 138 S.W. 2d 637. In 20 Am.Jur. 320, it is said: "Whenever issues of * * * fraud, and good faith are raised, the evidence must take a rather wide range and may embrace all the facts and circumstances which go to make up the transaction, disclose its true character, explain the acts of the parties, and throw light on their objects and intentions."

Since the trial court overruled the plea of privilege in the case before us, we must presume that the court found in such a way on the issue of fraud as to retain venue in Grayson County. We believe that taking into consideration all the facts and circumstances disclosed by the record, the evidence was sufficient to support such finding.

Defendant in several points complains that, except for testimony improperly admitted, there is no evidence that L. A. Blanton, Sr., as president had any authority to grant the concessions in question to his son; hence Grafft, the manager, should have ignored the son's statements even if he thought they were instructions from the president. There is testimony that L. A. Blanton, Sr., had such authority and had been exercising it for several years in granting similar concessions not only to his son Roy Blanton, but to several other persons. Defendant himself testified that he first went to his father to obtain permission for the handling of his cotton at reduced rates, and that his father in effect delegated to Grafft the authority to make the decision. Defendant claims that this is what he told Grafft. Under the circumstances defendant is hardly in position to claim that his father did not have the authority to grant concessions. There were no resolutions of the Board of Directors or other records introduced as to such authority, but the evidence in the record was adduced by the defendant on cross-examination of Grafft as well as by plaintiff on direct examination. Such being the case, we overrule appellant on these points.

We have considered all other points raised by defendant, but as we do not believe they are well taken, they are overruled.

The order of the trial court overruling defendant's plea of privilege is affirmed.

### On Motion for Rehearing.

In his motion for rehearing defendant points to the third to the last paragraph in our opinion and says that we have misunderstood him; that in no place in his brief has he made contentions as to the lack of authority of the president of the plaintiff corporation to grant concessions from the so-called tariffs.

The challenged paragraph was written in response to these points, which are copied from appellant's brief:

"(1) The court erred in permitting plaintiff's manager, Grafft, to testify that the president of the Company instructed him what to do along different things pertain-

ing to charges, and could tell him what to do and when to do it.

"(3) The court erred in permitting plaintiff's manager, Grafft, to testify that, notwithstanding his authority was to take over and manage the compress, he expected Mr. L. O. Blanton, Sr., the president, to direct the operation of the compress at all times.

"(4) Even if plaintiff had proved, as alleged, that the defendant had told Grafft that the president of the Company (defendant's father) had agreed that defendant would be charged transit rates for cotton, though the cotton was to be handled and treated as concentrated cotton, still, as a matter of law, this would not constitute fraud.

"(8) Plaintiff did not prove, as alleged, that Grafft was subject to the direction and control of the president of the Company in fixing prices to be charged plaintiff's customers."

We call attention especially to the objection in the first point to the testimony that the president "could tell him what to do and when to do it," and the statement in the eighth point that the plaintiff did "not prove, as alleged, that Grafft was subject to the direction and control of the president of the Company in fixing prices to be charged plaintiff's customers."

It seemed to us that the four points reproduced above set up the contention that plaintiff had the obligation to prove and had failed to prove with competent testimony that the president of the company had authority to order Grafft to make concessions from the so-called tariffs. If we misinterpreted the meaning of the points, we are glad to clarify the situation by stating that defendant disclaims having "advanced the contention to the effect that the president of a corporation does not have authority to grant concessions from so-called tariffs."

Defendant contends that Grafft himself had authority to grant and did grant the concessions in question. Even if Grafft did have the authority himself to grant concessions, as defendant contends, we think he would still be subject to the control and direction of the president, who could tell him what to do and when to do it in the matter of granting concessions. Whatever his authority may have been, Grafft testified that he did not himself in fact grant the concessions, but that they were granted only because he believed that the president had sent him instructions by defendant to that effect.

Defendant also says that we erred in overruling his Seventh Point that "Plaintiff has not shown that it suffered injury."

Plaintiff's theory of the case is that it was induced by false representations to charge defendant only its rates for handling transit cotton, whereas, but for such representations, it would have charged defendant its much higher rate for handling concentrated cotton. The difference in the two rates amounted to a total, according to plaintiff, of $9,470.37.

Defendant counters by saying that if plaintiff had attempted to charge the higher rate, he, defendant, would have sent his cotton elsewhere, or in any event would have greatly reduced his volume and plaintiff thus would have lost all or a great part of defendant's cotton business for the season. As it was a poor season and plaintiff had fixed overhead charges to meet, it would have hurt plaintiff badly if it had not obtained defendant's business, even at the lower rates.

It is true that defendant testified he would have sent his cotton elsewhere or would have reduced his volume if plaintiff had attempted to charge him the higher rates; and no one contradicted his statement. But defendant is an interested party and his testimony alone, though uncontradicted, raised only a fact issue to be determined at a trial on the merits by the court or the jury. Seaboalt v. Vandaveer, Tex.Civ.App., 231 S.W.2d 665.

We believe that under the record before us plaintiff raised a fact issue as to whether there was injury sustained, which issue involves a number of factors. The question must be submitted to the fact finder at a trial on the merits.

Motion for rehearing is overruled.