The **NORTH AMERICA LIFE INSURANCE COMPANY**, Appellant,

v.

**Albert L. WILBURN et ux., Appellees.**

No. 16567.

Court of Civil Appeals of Texas.

Dallas.

May 28, 1965.

Rehearing Denied June 25, 1965.

Peter Maniscalco, Houston, Fowler Roberts, Dallas, for appellant.

Edward M. Snyder, Jr., Dallas, for appellees.

WILLIAMS, Justice.

Appeal from an order overruling appellant's plea of privilege. Appellees, Albert L. Wilburn and wife Lennie W. Wilburn,

brought this action in the District Court of Dallas County, Texas, against appellant, North America Life Insurance Company, alleging that appellees were approached at their home in Dallas County, Texas, by persons representing appellant insurance company and that such representatives, pursuant to solicitations and representations, induced appellees to purchase a number of annuity contracts for a premium of $280 each, it having been represented to appellees that the sum of $280 would be the total amount that they would be obligated to pay on such contracts. Appellees alleged that they relied upon the representations which proved to be false, to their damage in the sum of $1,680. They asked judgment for actual and exemplary damages. Appellant filed its plea of privilege to be sued in Fort Bend County and appellees responded with their controverting affidavit wherein they asserted that venue in Dallas County was proper under Subdivision 7, Article 1995, Vernon's Ann.Civ.St., relating to fraud committed in the county where the suit was instituted. Following a nonjury trial the trial judge overruled appellant's plea of privilege. Appellant assails this judgment in three points of error: (1) that appellees had failed to prove misrepresentations which would constitute actionable fraud; (2) that appellees had failed to prove that they had suffered any damage, same being a requisite element of fraud; and (3) that appellees had failed to bring themselves within the exception to the venue statute and therefore the trial court should have transferred the case to Fort Bend County.

The case was submitted to the court, without a jury, and no findings of fact or conclusions of law were requested and none were filed by the trial court. Therefore, the presumption exists that the court found all fact issues raised by the evidence in a manner to support the judgment rendered. Our appellate review requires us to examine the evidence in the light most favorable to appellees and to indulge every reasonable inference in favor of the judgment. If there is any evidence to support the court's judgment the same will not be disturbed by us. Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609; James v. Drye, 159 Tex. 321, 320 S.W.2d 319; United States Fidelity & Guaranty Co. v. Texas Bank & Trust Co. of Dallas, Civ.App., 380 S.W.2d 900.

Our review of the record, in the light of the foregoing rules, reveals that there is evidence of probative force to support the implied findings of the trial court concerning the various elements of actionable fraud committed against appellees in Dallas County, Texas.

It is uncontroverted that the representations which are made the basis of appellees' claim of fraud were made in Dallas County, Texas.

Appellant contends that the representations allegedly made by its representatives to appellees were not as to any past or existing facts but amounted to promises to do something in the future and therefore could not constitute fraud, as a matter of law. 25 Tex.Jur.2d, § 44, pp. 682–683; Texas Star Flour Mills v. Victoria Wholesale Grocery, Inc., Civ.App., 115 S.W.2d 500; Powell v. Goldsmith et al., Civ.App., 164 S.W.2d 45. We cannot agree with appellant that this case falls within the rule announced by the authorities cited.

An examination of the record reveals that Lennie W. Wilburn, one of the appellees, testified that the representatives of appellant first approached her and her husband in April 1963 and told them that since they had previously purchased a contract from this same company in 1960 that they were then entitled to buy the new contract. It was also represented to them that they would only have to make one payment on these new contracts, namely, $280.

"Q. Did you or did you not question him as to whether or not there would be more than one payment on those contracts?

"A. Sure, we questioned him.

"Q. Did you do it once or many times?

"A. Several times.

"Q. And what was his reply to those questions?

"A. Well, 'That is all you have to pay. Without your first contract you couldn't get this. This is too good to be true. We could sell these to the people that had the first one and only to them.'"

On cross-examination she testified:

"Q. Will you tell me the circumstances under which you signed it, then." (Relating to the signing of the note.)

"A. I cannot. The only thing I can tell you is that he—I will just have to repeat that over and over—He said I would only have to pay $280.00 down.

"Q. I understand that, but the man said more than that to you, didn't he—He didn't keep saying that over and over, did he?

"A. He said it was too good to miss—You would have to take it. You have bought the first contract—bought the first contract in 1960—and without that contract you couldn't get these good ones."

She then testified that after she received the new contracts she compared them with the one they had previously purchased in 1960 and found that they were identical, and not different, as represented. In this connection she testified:

"Q. Did you have occasion to compare the contract that you bought in 1960 to the contract that you received in 1963?

"A. Whenever those contracts came I looked at them and I told my husband, I said, 'Something must be wrong, because these are exactly like the first one we got.' and he said, 'Surely, they told the truth.'

"Q. So that the contracts you bought in '63 was exactly the same contract that you bought in 1960?

"A. Exactly right.

"Q. All right, and the contract that you bought in 1960, on that contract, you had to make annual payments of some amount of money, is that right?

"A. Right. We were told that when we bought the one in 1960."

With reference to representations concerning the single payment, she testified in part:

"A. The agent said I would only have to pay $280.00 down and the contract lien would pay it out within 20 years, that Mr. Miller called them together and told them that.

"Q. The contract of lien would be paid out in 20 years?

"A. It would pay itself out, and what he meant by that, I do not know.

"Q. You didn't ask him?

"A. Well, yes, I asked him, but I can't recall all of the things that he said. He talked so fast you couldn't even keep up with him."

Mrs. Wilburn said that the representatives of appellant repeatedly told her and her husband that there would be no further payments other than the $280 on each contract purchased; that she did not read the instrument which she was asked to sign by the representatives since she relied upon them to tell her the truth. About one year after the receipt of the contracts she and her husband received a statement from the appellant insurance company asking them to pay additional sums which were due and payable on the contracts. At that time appellees wrote to the appellant and, claiming that the transactions had been misrepresented to them, demanded a refund

of the $1,680 that had been paid; and, the appellant having failed to comply with their request, they filed this suit.

■ In essence, the record reveals evidence of (1) the representation of fact that by virtue of appellees having previously purchased another and different contract in 1960 they could now purchase these new contracts for only $280 total payment for each and (2) that regardless of prior contractual status the total present payment for the new contracts was $280 each. Contrary to appellant's contention, each of these representations relates to either past or existing facts. Appellees say the representations proved to be false. Appellees say they relied upon these representations and would not have paid the consideration demanded if they had known otherwise.

In this state of the record, and viewing it only as to the question of venue, we deem the evidence to be sufficient to support the court's implied findings.

We had occasion to discuss and pass upon the character and quality of proof in fraudulent representation cases in Blanton v. Sherman Compress Co., Civ.App., 256 S.W.2d 884, which was a venue action involving Subdivision 7 of Art. 1995, V.A.C.S. There appellant had allegedly represented falsely that the president of appellee corporation had authorized the corporation to give preferential rates of charge to appellant. Chief Justice Dixon said, quoting from Ten-Cate v. First National Bank, Civ.App., 52 S.W.2d 323:

"Fraud is deducible from artifice and concealment as well as from affirmative conduct of a character to deceive. In 25 Corpus Juris, p. 1066, under title of 'Fraud,' it is said: '* * * The plainest case of false representation is the telling of a deliberate and intentional lie. * * * But a representation need not be a direct lie in order to constitute remedial fraud; the false representation may consist in a deceptive answer, or any other indirect but misleading language.'"

As to the question of intent, we said:

"We are aware that in Texas intent is not ordinarily an essential element in fraud. * * * Intent, being a state of mind, is often difficult to prove. It has been said that a person's state of mind cannot be proved by direct evidence from others. But this does not render the matter incapable of proof. The presence or absence of a certain state of mind may be proven by circumstances."

Discussing the problem of proof the Chief Justice said:

"'Whenever issues of * * * fraud, and of good faith are raised, the evidence must take a rather wide range and may embrace all the facts and circumstances which go to make up the transaction, disclose its true character, explain the acts of the parties, and throw light on their objects and intentions.' [20 Am.Jur. 320]."

See also Dallas Joint Stock Land Bank v. Lancaster, Civ.App., 91 S.W.2d 890; Corrigan v. Shell Petroleum Corporation, Civ.App., 62 S.W.2d 663; Chandler v. Butler, Civ.App., 284 S.W.2d 388.

■ The evidence, both direct and circumstantial, is amply sufficient to establish that appellant's representatives made false and misleading statements of fact to appellees and that they relied upon them to their damage.

Appellant earnestly contends, in its second point, that appellees failed to establish their damages and that such is an essential element of an action for fraud.

■ While there is some conflict among the authorities on the question of the proof necessary to sustain venue in the county where the fraud is alleged to have occurred, we think a correct statement of the rule is found in Trinity Universal Insurance Co.

et al. v. Soliz, Civ.App., 241 S.W.2d 625, as follows:

"In order to sustain venue under Section 7, Art. 1995, V.R.S. it is necessary that all of the constituting elements of fraud must appear. These are (1) A false representation made by defendant; (2) the reliance thereon by the plaintiff; (3) action in reliance thereon by the plaintiff; and (4) damage to the plaintiff resulting from such fraud or misrepresentation." (Citing cases.)

See also Texas Employers Ins. Ass'n v. McDaniel, Civ.App., 286 S.W.2d 465, and Clark on "Venue in Civil Actions in Texas," Chapter 7, pp. 54–55.

■ However, it is not necessary in this venue hearing that appellees should establish the exact amount of their damages suffered because of the fraud. True, they did have to establish some damage as part of their cause of action but the exact amount need not be proved. In Cockburn v. Less, Civ.App., 257 S.W.2d 470, this court, speaking through Mr. Justice Cramer, said:

"Appellant also asserts that the extent of the damage must be proved. We cannot agree with this contention. The court had jurisdiction over the amount involved in the pleadings. No plea in abatement asserting the amount alleged had been fraudulently alleged to confer jurisdiction on the trial court was filed. The venue fact was whether actual damage had been suffered, not the exact amount thereof."

See also Campbell v. McCown, Civ.App., 176 S.W.2d 226; Maulding v. Niemeyer, Civ.App., 241 S.W.2d 733; First Nat'l Bank of San Angelo, Texas v. Hill & Combs, Civ.App., 177 S.W.2d 75; 60 Tex.Jur.2d, § 218, p. 105.

■ An examination of the record reveals that appellees' suit was for an amount within the jurisdiction of the district court and no plea in abatement was levelled against such allegations as being fraudulent. Moreover, Mrs. Wilburn testified that she executed and delivered to appellant several checks in the sum of $280 each, amounting to $1,680, said checks being cashed by appellant. Appellees demanded of appellant to return the money and such demand was refused. We think this was ample evidence to support the trial court's implied findings of damages.

Finding no reversible error appellant's points are overruled and the judgment of the trial court is affirmed.

Affirmed.