**REVERSE and RENDER; and Opinion Filed April 9, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-17-01028-CV

**EBBY HALLIDAY REAL ESTATE, INC., Appellant**
**V.**
**KEVIN DUGAS, Appellee**

**On Appeal from the County Court at Law No. 3**
**Dallas County, Texas**
**Trial Court Cause No. CC-15-04871-C**

# MEMORANDUM OPINION

Before Justices Brown, Schenck, and Pedersen, III
Opinion by Justice Pedersen, III

This appeal arises from the sale of a condominium unit. The buyer, Kevin Dugas, claims the seller's agent, Ebby Halliday Real Estate, Inc. (Ebby), misrepresented the property's square footage. Ebby appeals a jury verdict awarding Dugas damages. Among other issues, Ebby challenges the legal sufficiency of the evidence to support the jury's finding that Ebby made a false representation. We conclude the evidence is legally insufficient to support the jury's finding. We therefore reverse and render.

## BACKGROUND

The seller, Elizabeth McLarry, retained Ebby to put her condominium unit on the market. Karen Estes, a salesperson employed by Ebby, listed the property on the Multiple Listing Service

(MLS).[1] The MLS database contains a drop-down menu from which the listing agent can select "appraisal," "builder," "tax," or "other" as the source of the subject home's square-footage information. Estes selected "tax" for the unit in question, as do most agents when listing properties. Based on this selection, the MLS database accessed the unit's square footage from Dallas Central Appraisal District (DCAD) records and uploaded this information into the MLS listing. The listing noted the property's square footage as "1,178 / Tax." The listing also contained a narrative field prepared by Estes in which she described the property as a "[d]arling 1,178 sq. ft." unit. The foregoing descriptions were consistent with DCAD's records, which list both the "[l]iving [a]rea" and the "[t]otal [a]rea" of the unit as 1,178 square feet. However, this is not the unit's "livable" square footage. This number includes the balcony and garage.

Dugas's agent, Lisa DeWaal, gave him a copy of the MLS listing. Dugas was a first time home buyer, and he relied on the listing's description of the property's square footage in deciding to make an offer to purchase the property. Dugas purchased the condominium in March 2015 for $130,000. Although a buyer's lender typically requires an appraisal of the property, in this case Dugas borrowed the purchase money from his father. Thus, no appraisal was performed. After the transaction closed, Dugas measured the unit and discovered that its "livable" square footage—i.e., the interior climate-controlled space *excluding* the balcony and garage—was only 885 square feet. In other words, the unit was approximately twenty-five percent smaller than Dugas had understood it to be.

Dugas sued Ebby and Estes and asserted claims for (i) violations of the Deceptive Trade Practices Act (DTPA), *see* TEX. BUS. & COM. CODE ANN. §§ 17.41–.63, (ii) statutory fraud, *see id.* § 27.01, and (iii) negligent misrepresentation. Dugas also asserted a claim against Ebby for its

---

[1] It is undisputed that "[a]t all times relevant to the claims in this lawsuit," Estes "was acting on behalf of and as an agent of [Ebby] and in the course and scope of her agency for [Ebby's] benefit."

negligent supervision and training of Estes. The defendants generally denied Dugas's claims, and they also pleaded section 17.506 of the Business Commerce Code. *Id.* § 17.506(a)(1)–(2). This section provides an affirmative defense to a DTPA claim if the defendant gave reasonably and timely written notice to the plaintiff of the defendant's reliance on written information from official government records or other sources that, if false, the defendant did not know and could not reasonably have known of such falsity. *Id.*

Dugas's DTPA and statutory fraud claims against Ebby were tried before a jury in April 2017.[2] At the conclusion of the trial, the jury found that Ebby engaged in false, misleading, or deceptive trade practices and committed statutory fraud. The jury awarded Dugas $32,335.48, which is the amount that he claims he overpaid for the subject unit, plus additional sums for attorney's fees. However, in response to Question 2 of the charge, the jury found for Ebby regarding its DTPA affirmative defense.

Following the jury's verdict, Dugas filed a motion for entry of judgment and to disregard certain answers in the verdict. Ebby countered by filing a motion for judgment notwithstanding the verdict. On June 26, 2017, the court held a hearing on both motions. A little over a month later, on July 31, the court rendered judgment awarding Dugas $32,335.48, plus additional sums for attorney's fees. The judgment also awarded Dugas pre- and post-judgment interest and costs. Moreover, the judgment stated the court had disregarded the jury's answer to Question 2 because no evidence supported this answer. Ebby then filed this appeal.

---

[2] Dugas's negligent misrepresentation and negligent supervision and training claims were not submitted to the jury, nor were any of his claims against Estes. However, the court's judgment, rendered on July 31, 2017, "finally dispose[d] of all parties and claims."

## ANALYSIS

### I.      Statutory Fraud

Ebby raises eight issues, two of which relate to Dugas's DTPA claim, four of which relate to his statutory fraud claim, and two of which relate to other topics. It appears that the court's judgment awarded damages to Dugas based on his statutory fraud claim.[3] Therefore, we will begin by considering Ebby's issues related to Dugas's fraud claim. Question 5 of the court's charge asked whether Ebby "committed statutory fraud" against Dugas. According to the charge, statutory fraud occurs when, among other elements, "there is a false representation of a past or existing material fact." *See* TEX. BUS. & COM. CODE ANN. § 27.01(a)(1) (providing statutory basis for the foregoing definition). The jury answered "yes" to Question 5. It also found, in response to Question 6, that Ebby was not actually aware that the subject representation was false. *See id.* § 27.01(c) (providing for exemplary damages if a defendant makes a false representation with actual awareness of such falsity). Ebby's third issue challenges the legal sufficiency of the evidence to support the jury's finding that Ebby misrepresented the size of the condominium unit.

To prevail on this issue, Ebby must demonstrate that no evidence supports the jury's finding. *Graham Central Station, Inc. v. Pena*, 442 S.W.3d 261, 263 (Tex. 2014) (per curiam). "We will sustain a legal sufficiency challenge if the evidence offered to prove a vital fact is no more than a scintilla." *Id.* (citation and internal quotation marks omitted). In conducting this analysis, "we credit evidence that supports the verdict if reasonable jurors could have done so and disregard contrary evidence unless reasonable jurors could not have done so." *Id.* (citation and internal quotation marks omitted). We must determine "'whether the evidence at trial would enable

---

[3] Specifically, the judgment did not reduce Dugas's damages award despite the jury's finding that Dugas was sixteen percent responsible for his damages and DeWaal was forty percent responsible for Dugas's damages. The fact that Dugas's damages were not reduced suggests that his statutory fraud claim was the basis for the judgment's damages award. *See LandAmerica Commonwealth Title Co. v. Wido*, No. 05–14–00036-CV, 2015 WL 6545685, at *11 (Tex. App.—Dallas Oct. 29, 2015, no pet.) (mem. op.) ("[P]roportionate responsibility does not apply to statutory fraud.").

reasonable and fair-minded people to reach the verdict under review.'" *Id.* (quoting *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)).

As discussed previously, the MLS listing prepared by Estes referred to the subject unit as "1,178 / Tax." Ebby contends this notation meant 1,178 square feet according to DCAD. It argues the MLS listing accurately reported the DCAD records' description of the property's size.[4] Dugas responds that a reasonable juror could have found that the term "/ Tax" either had no meaning or meant the amount of square footage on which the unit would be taxed—in other words, the unit's "livable" square footage. In Dugas's view, Ebby's statement was false because in reality the unit had only 885 "livable" square feet. As support, he points to Estes's testimony that the reference to 1,178 square feet in Ebby's listing (i) was intended to convey "livable" square feet and (ii) was false if the actual square footage was less.

A statutory fraud clam requires proof of a misrepresentation, not an omission. TEX. BUS. & COM. CODE ANN. § 27.01(a); *cf. Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001) (noting, as a general rule, that "[s]ilence may be equivalent to a false representation only when the particular circumstances impose a duty on the party to speak and he deliberately remains silent."). We must focus on the actual language of the purported misrepresentation, i.e., "1,178 / Tax," as opposed to what Ebby subjectively intended it to say. *Cf. Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890, 893 (Tex. 2017) ("A contract's plain language controls, not what one side or the other alleges they intended to say but did not." (citation and internal quotation marks omitted)). In interpreting the term "/ Tax," we may consider its commonly accepted meaning within the real estate industry. *Cf. RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 121 n.1 (Tex. 2015) (stating same in context of construing undefined contract terms). However, the commonly accepted meaning "may not

---

[4] Ebby points to Dugas's concession at trial that Ebby's listing was not a misrepresentation if it were interpreted as simply reporting that DCAD records showed the property to be 1,178 square feet. Dugas also testified that, at the time of the subject transaction, he did not understand what "/ Tax" meant.

apply when the language and its context demonstrate that the parties intended a different meaning." *Id.*

### A. What Was the Representation?

The evidence established that MLS listings can be accessed only by licensed real estate agents who are members of the MetroTex Association of Realtors, though a prospective homebuyer may obtain an individual listing from his or her agent or in an "open house." Terri Cox, a retained expert for Ebby, testified that the term "/ Tax" is understood *within the real estate industry* to mean the source of the square footage information, which in this case was DCAD. Likewise, both Estes and DeWaal understood "/ Tax" in the subject listing to mean that tax records were the source of the listing's description of the unit's size. In addition, both Estes and Cox testified that a home's square footage is understood in the industry to mean its "livable" square feet. Based on this evidence, we interpret "1,178 / Tax" as a representation by Ebby that DCAD had reported the subject unit as 1,178 "livable" square feet.

### B. Was There a Misrepresentation?

We next consider whether there is legally sufficient evidence to support the jury's finding that Ebby's "1,178 / Tax" representation was false.

#### 1. Affirmative misrepresentation

It is undisputed that the foregoing statement accurately reported what DCAD's records said. Thus, the statement was false only if a reasonable juror could interpret it as independently verifying the subject unit's "livable" square footage—i.e., that the unit was *in fact* 1,178 "livable" square feet. As support for this position, Dugas notes that the narrative field in Ebby's listing— which referred to a "darling" 1,178 square foot unit—did not restate the "/ Tax" qualification that was set forth earlier in the listing. He urges that a reasonable juror could view the narrative description as an affirmation by Ebby that the unit in fact contained 1,178 "livable" square feet.

Consistent with this argument, Dugas testified that he assumed Estes had verified the unit's square footage "if she was typing it herself."

We disagree with Dugas's contention, because it is inconsistent with the principle that documents should be read as a whole. *See J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003) ("No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument."). The listing's subsequent reference to a "darling" 1,178 square foot unit must be read in the context of its prior description of the unit as "1,178 / Tax." Nor are we persuaded by Dugas's argument that Ebby's listing misrepresented the unit's price per-square-foot because such price was based on a calculation that erroneously included "non-livable" square feet. In light of the "/ Tax" representation discussed above, Ebby's listing must be interpreted as representing the unit's price per square foot based on the square footage reported by DCAD, i.e., 1,178 square feet.

Dugas additionally argues that Ebby consistently claimed DCAD to be reliable even though Ebby did not know whether DCAD's records were accurate. He cites *Boles v. Aldridge*, in which the plaintiff sought to rescind a land exchange based upon the defendant's purported misrepresentations that induced the exchange. 175 S.W. 1052, 1052 (Tex. 1915). The Texas Supreme Court held that the defendant positively affirmed the truthfulness of material information obtained from a third party who had been on the subject land, notwithstanding that the defendant also stated he had never personally seen the land. *Id.* In that case, the defendant said he knew the parties who had been upon the land, "they were perfectly reliable, and he would guaranty what they had told him." *Id.* According to the Court, "[t]he positive representation as a fact of that which is untrue and concerning which a party has no knowledge is equivalent to an assertion that he knows it to be true, and, where material, is equally actionable with a statement known to be false." *Id.* The Court reversed the court of appeals' affirmation of an instructed verdict for the defendant

and remanded the case for trial on the question of whether the plaintiff relied on the defendant's representations. *Id.* at 1053.

Unlike the representation in *Boles*, Ebby's listing did not guarantee that DCAD's records were accurate. To the contrary, the listing represented that Ebby's source of information was "Deemed Reliable *But Not Guaranteed*."[5] (Emphasis added). As noted by the *Boles* court, "what one states to another merely as his information touching the subject of a transaction will not support an action for rescission, *if such was in fact the information received, though in fact it was untrue.*" 175 S.W. at 1053 (emphasis added). *Boles* does not support Dugas's contention that Ebby's listing vouched for the accuracy of DCAD's records.

Dugas also cites *First Title Co. of Waco v. Garrett*, in which the Supreme Court stated that Texas law imposes a duty on a seller who makes an affirmative representation to know whether that statement is true. 860 S.W.2d 74, 76 (Tex. 1993). As explained above, Ebby's "1,178 / Tax" representation relayed only that DCAD records had reported the subject unit as 1,178 "livable" square feet. *Garrett* does not support the proposition that Ebby owed a duty to verify whether these records were correct.

For each of these reasons, we conclude the evidence is legally insufficient to support a jury finding that Ebby made an affirmative misrepresentation.

### B. Indirect misrepresentation

Dugas also urges that Ebby's conduct amounted to a misrepresentation. He relies on *Blanton v. Sherman Compress Co.*, in which this Court acknowledged that "'a representation

---

[5] The phrase "deemed reliable but not guaranteed" appeared in Ebby's listing on the same line as the copyright, which referred to "NTREIS" (also known as the North Texas Real Estate Information Systems, Inc.). Dugas cites section 16.07 of the MLS rules, which requires that the "[p]ublication or display of MLS data must include a notice indicating that the data is deemed reliable, but is not guaranteed accurate *by the MLS or NTREIS*." (Emphasis added). Based on this provision, he appears to interpret the term "not guaranteed" in the subject listing as meaning only that the MLS and NTREIS had not guaranteed the listing's source information, as opposed to an interpretation that Ebby had not guaranteed this information. We disagree with Dugas's interpretation. Notwithstanding the MLS rules, the term "not guaranteed" in Ebby's listing contains no qualification as to who was "not guarantee[ing]" the source information. Absent such a qualification, we construe Ebby's listing as meaning that it was Ebby who deemed its source information to be "reliable but not guaranteed."

literally true is actionable if used to create an impression substantially false.'" 256 S.W.2d 884, 887 (Tex. App.—Dallas 1953, no writ) (quoting 37 C.J.S. *Fraud*, § 17). Stated another way, actionable fraud includes not only a "direct lie," but also "a deceptive answer, or any other indirect but misleading language." *Id.* (citation and internal quotation marks omitted).[6]

The terms "used to create" and "deceptive" in *Blanton* suggest an intent to deceive. *See id.* at 888 ("Recovery cannot be had for a true statement misunderstood without fault or design of the speaker." (citation and internal quotation marks omitted)). Relevant to this point, Dugas notes that "[t]he presence . . . of a certain state of mind may be proved by circumstances" and that "[f]raud is deducible from artifice and concealment as well as from affirmative conduct of a character to deceive." *Campbell v. Booth*, 526 S.W.2d 167, 169 (Tex. App.—Dallas 1975, writ ref'd n.r.e.) (citing, inter alia, *Blanton*, 256 S.W.2d at 887). He also urges that Ebby's intent can be inferred from its refusal to change its business practices after becoming aware that DCAD had misstated the subject unit's "livable" square footage. *See Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex. 1986) ("While a party's intent is determined at the time the party made the representation, it may be inferred from the party's subsequent acts after the representation is made.").

Our decision in *Blanton* dealt with an indirect misrepresentation in the context of common law fraud.[7] Assuming without deciding that a "false representation" under section 27.01(a) includes indirect misrepresentations, we must review all of the circumstantial evidence, including the competing inferences therefrom, to determine whether a reasonable juror could have found that

---

[6] *See also Tex. Emp't Comm'n v. Oliver*, 691 S.W.2d 819, 821 (Tex. App.—Houston [1st Dist.] 1985, no writ) ("'Misrepresentation' means 'any manifestation by words or other conduct by one person to another that, *under the circumstances*, amounts to an assertion not in accordance with the facts.'" (quoting Black's Law Dictionary 903 (5th ed. 1981) (emphasis added))); *State Nat'l Bank of El Paso v. Farah Mfg. Co.*, 678 S.W.2d 661, 681 (Tex. App.—El Paso 1984, writ dism'd by agr.) ("A representation that a maker knows to be capable of two interpretations, *one of which he knows to be false* and the other true is fraudulent if it is made: (a) with the intention that it be understood in the sense in which it is false, or (b) without any belief or expectation as to how it will be understood, or (c) with reckless indifference as to how it will be understood." (quoting RESTATEMENT (SECOND) OF TORTS § 527 (1977) (emphasis added))).

[7] Section 27.01 was enacted in 1967, after *Blanton* was decided. Act of May 25, 1967, 60th Leg., R.S., ch. 785, § 1, sec. 27.01, 1968 Tex. Gen. Laws 2343, 2603, *amended by* Act of May 19, 1983, 68th Leg., ch. 949, §§ 1, 2, 1983 Tex. Gen. Laws 5208, 5208–09.

Ebby's "1,178 / Tax" representation, through literally true, was used by Ebby to create an impression that was substantially false. *See City of Keller*, 168 S.W.3d at 814 ("[W]hen the circumstantial evidence of a vital fact is meager, a reviewing court must consider not just favorable but all the circumstantial evidence, and competing inferences as well.").

Turning to the record before us, MLS rules require the listing agent to "verify and confirm the accuracy of all information furnished to Other Participants and the public." In addition, there was evidence at trial that DCAD information is often unreliable. Nevertheless, Ebby's agents rely on DCAD as their source of square footage information,[8] and they are not trained to search deed records to verify the "livable" square footage of the properties they list. Nor do agents typically hire an appraiser to measure a home. Moreover, while agents measure room dimensions when listing homes, and in this case Estes measured the dimensions of several of the subject unit's rooms, Ebby trains its agents not to "ballpark" the total "livable" square footage of a home by adding up the individual room measurements.[9]

Based on this evidence, Dugas contends that a reasonable juror could infer that Ebby actively trained its agents to rely solely on DCAD so that Ebby would not have to change its listings by reducing the reported size of the properties that it advertised for sale. In Dugas's view, the jury reasonably could have inferred that Ebby "turn[ed] a blind eye" to the inaccuracy of DCAD's records so that Ebby could make a larger sales commission. Related to this point, Dugas contends that the unit in question has a simple layout that can easily be measured. Dugas himself measured the unit after purchasing it and discovered its "livable" square footage to be 885 square feet.

---

[8] Despite Ebby's reliance on DCAD, Dugas notes that Estes did not know whether DCAD records were accurate. Moreover, Cox was not one-hundred percent certain from where DCAD obtained its square footage information.

[9] Bases on Ebby's listing regarding the subject unit, it is possible to calculate the square footage of each room that Ebby measured by multiplying the room's length times its width. The sum total of the square footage of all of the rooms measured is 608 square feet.

Based on our review of each piece of the circumstantial evidence in light of all the known circumstances, *City of Keller*, 168 S.W.3d at 813–14, we conclude that no reasonable juror could infer that Ebby acted with the intent to deceive Dugas. Specifically, Ebby's measurement of the dimensions of certain rooms in the subject condominium does not establish that it knew DCAD's records were wrong regarding the condominium's total "livable" square footage. Moreover, while Ebby could have—and according to Dugas's interpretation of the MLS rules, should have— independently verified the accuracy of the DCAD records, there is no evidence that Ebby chose not to do so out of a concern that it might discover the records to be wrong, as opposed to some other innocent reason.

In sum, the evidence at most gives rise to equal inferences of both fraudulent and non-fraudulent conduct. *See City of Keller*, 168 S.W.3d at 813 ("When the circumstances are equally consistent with either of two facts, neither fact may be inferred." (citation and internal quotation marks omitted)). Accordingly, a reasonable juror could not have inferred that Ebby made an indirect misrepresentation. Our conclusion in this respect is consistent with the jury's determination, in response to Question 6, that Ebby did not have actual awareness that the subject representation was false.

For each of the foregoing reasons, the evidence is legally insufficient to support the jury's finding in response to Question 5 that Ebby misrepresented a past or existing material fact. We sustain Ebby's third issue.

## II. Deceptive Trade Practices Act

Ebby's first issue challenges the legal sufficiency of the evidence to support the jury's finding that Ebby violated the DTPA. Pertinent to this issue, Question 1 of the charge asked whether Ebby "engaged in any false, misleading, or deceptive act or practice." The charge defined "[f]alse, misleading, or deceptive act or practice" as "any of the following":

1. representing that goods[10] had or would have characteristics that they did not have;

2. representing that goods have quantities which they do not have;

3. advertising goods with the intent not to sell them as advertised; or

4. failing to disclose information concerning goods which was known at the time of the transactions when such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

*See* TEX. BUS. & COM. CODE ANN. § 17.46(b)(5), (9), (24) (providing statutory basis for the foregoing definitions). The jury answered "yes" to Question 1. It also found in response to Question 4 that Ebby committed a "[k]nowing[ ]" DTPA violation—in other words, with "actual awareness, at the time of the conduct[,] of the falsity, deception[,] or unfairness of the conduct in question." However, in response to Question 2, the jury found for Ebby with respect to its DTPA affirmative defense. Specifically, the jury found, among other elements with respect to this defense, that Ebby did not know and could not reasonably have known that the records or sources on which it relied were false. *See* TEX. BUS. & COM. CODE ANN. § 17.506(b)(1)–(2). As described previously, the court's judgment disregarded the jury's answer to this question.

Items 1 through 3 of Question 1 articulate certain types of affirmative misrepresentations that are actionable under the DTPA. "A seller and [its] agent are liable under the DTPA for affirmative misrepresentations, notwithstanding the agent's lack of knowledge or notice of falsity." *Camden Mach. & Tool, Inc. v. Cascade Co.*, 870 S.W.2d 304, 311–12 (Tex. App.—Fort Worth 1993, no writ). As discussed above, no legally sufficient evidence supports a jury finding that Ebby made an affirmative misrepresentation to Dugas.

---

[10] The charge defined "goods" as including "real property purchased or leased for use." *See* TEX. BUS. & COM. CODE ANN. § 17.45(1) (providing statutory basis for such definition).

In addition, item 4 of Question 1 notes that a failure to disclose is actionable under the statute if the seller at the time knew of the subject information that should have been disclosed. *See* TEX. BUS. & COM. CODE ANN. § 17.46(b)(24). The statute requires actual knowledge of the non-disclosed information. *Pfeiffer v. Ebby Halliday Real Estate, Inc.*, 747 S.W.2d 887, 889–90 (Tex. App.—Dallas 1988, no writ).[11] As described herein, the evidence suggests that Ebby reasonably could have determined the subject unit measured less than 1,178 "livable" square feet. However, there is no evidence that Ebby actually knew this information when the transaction closed. Moreover, as noted above, the jury found in response to Question 2 that Ebby did not know and could not reasonably have known that the records or sources on which it relied were false. Absent actual knowledge by Ebby, the evidence is legally insufficient to support a finding in response to item 4 that Ebby knowingly failed to disclose that the unit was only 885 "livable" square feet. We sustain Ebby's first issue.

## CONCLUSION

Based upon our review of the evidence, we conclude that no reasonable or fair minded juror could have found that Ebby made a misrepresentation or that it was aware at the time that DCAD's records were incorrect. Accordingly, the evidence is legally insufficient to support the jury's verdict. Given this holding, we need not consider Ebby's remaining issues. We reverse the court's judgment and render judgment that Dugas take nothing.

171028F.P05

/Bill Pedersen, III/

BILL PEDERSEN, III
JUSTICE

---

[11] The version of the statute at issue in *Pfeifer* was contained in section 17.46(b)(23). *See* Deceptive Trade Practices Act, 66th Leg., R.S., ch. 603, § 3, 1979 Tex. Gen. Laws 1327, 1329, *amended by* Act of May 23, 2001, 77th Leg., R.S., ch. 962, § 1, 2001 Tex. Gen. Laws 1929, 1931. Effective September 1, 2001, section (b)(23) was moved to section 17.46(b)(24). The language of the renumbered provision is substantially the same as the former provision.



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

EBBY HALLIDAY REAL ESTATE, INC.,
Appellant

No. 05-17-01028-CV      V.

KEVIN DUGAS, Appellee

On Appeal from the County Court at Law
No. 3, Dallas County, Texas
Trial Court Cause No. CC-15-04871-C.
Opinion delivered by Justice Pedersen, III.
Justices Brown and Schenck participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and judgment is **RENDERED** that appellee KEVIN DUGAS take nothing.

It is **ORDERED** that appellant EBBY HALLIDAY REAL ESTATE, INC. recover its costs of this appeal from appellee KEVIN DUGAS.

Judgment entered this 9th day of April, 2019.